[Cite as *Estate of Karder* , 2011-Ohio-3229.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


|  | : | JUDGES: |
| --- | --- | --- |
| IN RE THE ESTATE OF | : | William B. Hoffman, P.J. |
| JOE MICHAEL KARDER, | : | Julie A. Edwards, J. |
| DECEASED | : | Patricia A. Delaney, J. |
|  | : |  |
|  | : | Case No. 2010CA00297 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Civil Appeal from Stark County
                              Court of Common Pleas, Probate
                              Division, Case No. 203096

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       June 27, 2011

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

STEVEN P. OKEY                        ROBERT C. MEEKER
The Okey Law Firm, LPA                Blakemore, Meeker &
337 Third Street, N.W.                Bowler Co., LPA
Canton, Ohio  44702-1786             19 North High Street
                                      Akron, Ohio  44308

MATTHEUW W. OBERHOLTZER               For Deidre A. Hanlon
Oberholtzer & Oberholtzer Attorneys
at Law, LLC                           JOHN M. PRELAC
116 Cleveland Avenue, N.W.            JOHN S. KAMINSKI
Courtyard Centre, Suite 650           Day Ketterer Ltd.
Canton, Ohio  44702-1724             200 Market Ave., North, Suite 300
                                      Canton, Ohio  44701-4213

*Edwards, J.*

{¶1} Appellant, Robert Karder, former Administrator of the Estate of Joe Michael Karder, appeals from the October 7, 2010, Judgment Entries of the Stark County Court of Common Pleas, Probate Division.

## STATEMENT OF THE FACTS AND CASE

{¶2} On February 12, 2008, appellee R.S. filed a civil complaint against Joe Michael Karder in the Stark County Court of Common Pleas[1] alleging that he had sexually abused and molested her. After Joe Michael Karder died intestate on March 16, 2008, appellant Robert Karder was appointed administrator of his estate on May 9, 2008. Appellant's Application for Authority to Administer the Estate listed the value of the estate at $264,000.00. Of this figure, $212,000.00 represented real property and $52,000.00 represented personal property.

{¶3} On May 22, 2008, appellee R.S. presented a claim as a creditor against the estate pursuant to R.C. 2117.06(A)(1)(b).

{¶4} On June 12, 2008, appellee R.S. filed a motion requesting in part, that the distribution of assets and the sale of real estate be stayed.

{¶5} On July 25, 2008, an Inventory and Appraisal was filed that listed the value of the estate at $234,817.60 with the value of the real property listed at $211,900.00.

{¶6} Subsequently, on October 1, 2008, appellee R.S. dismissed her complaint in Stark County Common Pleas Court and then, on December 5, 2008, refiled her complaint, naming the Estate of Joe Michael Karder as the defendant. On the same date, appellee R.S. filed a Notice of Refiling Action Against Estate. In such notice,

---

[1] The case was captioned *Jane Doe v. Joe M. Karder.*

appellee R.S. stated, in relevant part, as follows: "[R.S.], as creditor of the estate, requests that no transfer of assets or real or personal property, nor distributions or disbursements of any kind that may be to the prejudice of her claim be approved,… until final adjudication of the action pending in the Stark County Court of Common Pleas."

{¶7} On February 11, 2009, the trial court in appellee R.S.'s case granted summary judgment against appellee R.S. based on the statute of limitations. Appellee R.S. timely appealed from such decision.

{¶8} On October 19, 2009, appellant filed a Motion to Approve the sale of the decedent's real estate. Appellant, in his motion, attached a copy of an appraisal indicating that the appraised value of the same was $175,000.00. The next day, appellant filed a Motion for Reimbursement. Appellant, in such motion, sought reimbursement of $60,820.26 for attorney fees that he alleged that he had personally advanced to a law firm for representation in the lawsuit filed by R.S. A hearing on the Motion for Reimbursement was scheduled for December 16, 2009. As memorialized in a Judgment Order filed on November 16, 2009, the trial court granted the Motion for Reimbursement and ordered that appellant reimburse himself $60,820.26 for monies that he had personally advanced to a law firm for legal services rendered in the case filed by appellee R.S. Pursuant to a Judgment Order filed the same day, the trial court approved the sale of the real property.

{¶9} Pursuant to an opinion filed on December 21, 2009, in *Swartz v. Estate of Joe M. Karder*, Stark App. No. 2009CA00041, 2009-Ohio-6790, this Court, in part, reversed the decision of the trial court and remanded the case for further proceedings.

{¶10} Thereafter, on March 26, 2010, appellee R.S., as a creditor of the estate, filed a Motion to Vacate pursuant to Civ.R. 60(B). Appellee R.S., in her motion, sought to vacate the November 16, 2009 Judgment Order which permitted appellant to reimburse $60,820.26 to himself. Appellee R.S., in her motion, alleged that appellant's October 20, 2009 Motion for Reimbursement, the entry setting a hearing on the same, and the November 16, 2009 Judgment Order granting such motion were not served on her counsel. Appellee R.S., in her motion, asked that appellant be ordered to return the amount of $60,820.26 to the estate. On March 26, 2010, appellee R.S. also filed a motion to make her, as a creditor of the estate, a party to the proceedings.

{¶11} On May 17, 2010, appellee R.S. filed a Motion to Remove Fiduciary. Appellee R.S., in her motion, argued that appellant should be removed as the estate fiduciary because of fraudulent conduct that came to light during discovery in her civil action against the estate. Appellee R.S. specifically alleged that appellant had falsely represented to the court that a buyer, Mike Hoehn, had been obtained for the decedent's real property, and that Hoehn had bought the same with his own funds for $150,000.00 when, appellant had approached Hoehn and made him a straw man to buy the house for appellant using appellant's money. Appellee R.S. further alleged that the house was titled in Hoehn's name with the arrangement that he would later quit-claim it back to appellant. According to appellee R.S., this conduct did not come to light until, after appellant's deposition was taken on March 23, 2010, appellant signed a document entitled "Certificate", which was an errata sheet signed by appellant on March 30, 2010 and notarized by his counsel, in which he made material changes to his sworn deposition testimony. Appellee R.S. noted that while, during his deposition, appellant

testified that Hoehn bought the decedent's house, appellant, in the Certificate, stated that he asked Hoehn if he would be willing to put the house in his name if appellant gave him the money and then later quit-claim the house back to appellant.

{¶12} Appellee R.S., on May 25, 2010, also filed a Motion to Vacate the Judgment Approving Sale of Real Property pursuant to Civ.R. 60(B) on the basis that appellant "has engineered a sham sale, engaged in self-dealing, and committed fraud upon the Court."

{¶13} A hearing on appellee R.S.'s Motion to Vacate the Judgment seeking the return of the monies reimbursed to appellant and her Motion to Vacate Judgment approving the sale of the real estate was held on July 14, 2010. A hearing on appellee R.S.'s Motion to Remove Fiduciary was held on August 23, 2010. As memorialized in Judgment Orders filed on October 7, 2010, the trial court granted all the motions.

{¶14} Appellant now raises the following assignments of error on appeal:

{¶15} "I. THE PROBATE COURT ABUSED ITS DISCRETION, PURSUANT TO CIV. R. 60(B), WHEN IT GRANTED THE INTERESTED PARTY'S MOTIONS TO VACATE THE JUDGMENT ORDER APPROVING THE SALE OF DECEDENT'S REAL PROPERTY AND THE JUDGMENT ORDER APPROVING THE REIMBURSEMENT OF ROBERT KARDER.

{¶16} "II. THE PROBATE COURT ABUSED ITS DISCRETION WHEN IT REMOVED ROBERT KARDER AS ADMINISTRATOR FOR THE ESTATE, PURSUANT TO R.C. § 2109.24 AND R.C. §2109.44."

I

{¶17} Appellant, in his first assignment of error, argues that the trial court abused its discretion when it granted the Motion to Vacate the Judgment Order approving the sale of the decedent's real property and the Judgment Order approving the reimbursement of $60,820.26 to appellant. Both motions were filed pursuant to Civ.R. 60(B).

{¶18} Civ.R. 60 states, in relevant part, as follows: " B) Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud; etc

{¶19} "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation."

{¶20} A motion for relief from judgment under Civ.R. 60(B) lies in the trial court's sound discretion. *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 514 N.E.2d 1122. In order

to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

{¶21} In *GTE Automatic Electric Inc. v. ARC Industries,* Inc. (1976), 47 Ohio St.2d 146, 351 N.E.2d 113, paragraph two of the syllabus, the Supreme Court of Ohio held the following:

{¶22} "To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." If any one of the above requirements are not met, the motion should be dismissed. *Rose Chevrolet v. Adams* (1989), 36 Ohio St.3d 17, 520 N.E.2d 564.

{¶23} The first issue to address is whether or not the trial court abused its discretion in granting the motion to vacate the Judgment Entry approving the sale of the decedent's real estate. As is stated above, appellee R.S., on May 25, 2010, filed a Motion to Vacate the Judgment Approving Sale of Real Property pursuant to Civ.R. 60(B) on the basis that appellant "has engineered a sham sale, engaged in self-dealing, and committed fraud upon the Court."

{¶24} There is no dispute that such motion was filed within a reasonable time. While the order granting the sale was issued in November of 2009, the motion was filed in May of 2010.

{¶25} R.C. 2109.44 states as follows: "Fiduciaries shall not buy from or sell to themselves and shall not have in their individual capacities any dealings with the estate, except as expressly authorized by the instrument creating the trust and then only with the approval of the probate court in each instance. No corporate fiduciary, other than a trust company, as defined in section 1101.01 of the Revised Code, shall be permitted to deal with the estate, any power in the instrument creating the trust to the contrary notwithstanding. This section does not prohibit a fiduciary from making advancement when the advancement has been expressly authorized by the instrument creating the trust or when the probate court approves or from engaging in any act authorized by this chapter." As noted by the court in *In re Trust U/W of A.J. Woltering* (March 26, 1999), Hamilton App. No. C- 970913, 1999 WL 163759 "Although not specifically stated in R.C. 2109.44, it is generally recognized that a fiduciary may engage in self-dealing not only by directly purchasing such property, but also by facilitating the purchase of such property by another person or entity closely aligned with the fiduciary such that the fiduciary's personal interest in the purchase is substantial enough that it might affect his judgment in making the sale." Id at 4.

{¶26} At the July 14, 2010 hearing in this matter, appellant testified that, during his March 23, 2010, deposition[2] he testified that Mike Hoehn used his own money to buy the decedent's house from the estate and that Hoehn purchased the same using money that appellant had repaid him for loans that Hoehn had made to him over the years. Appellant testified that, after the deposition, he signed an errata sheet on March 30, 2010, that was notarized by his counsel. On the errata sheet, appellant indicated that he had provided the funds for buying the house and that he had approached Hoehn

---

[2] Appellant's deposition was filed with the trial court.

and asked Hoehn if he would be willing to buy the house using appellant's money, put the house in Hoehn's name and then later quit-claim the house back to appellant.[3] At the July 14, 2010, hearing before the trial court, appellant testified that he was living in the house because he was helping Hoehn work on the same.  During his deposition, appellant's counsel, Jeffrey Patterson, testified that he notarized and signed the errata sheet and that appellant signed the same voluntarily under oath.

{¶27} During his July 12, 2010, deposition, Michael Hoehn testified that appellant showed him the decedent's house in late summer or early fall of 2009 and that appellant's nephew was living there at the time. He testified that he bought the house, but that during his discussion with appellant, he had told him that he could not afford it. Hoehn testified that he did not have the money to buy the house and that he got the money to buy the house from appellant's repayment of a loan. Hoehn specifically testified that he had loaned appellant $150,000.00 to $160,000.00 over a period of time and that appellant repaid the same. Hoehn testified that he did not have any notes or ledger documenting the loans, that he never asked appellant to sign any type of note indicating that appellant owed him the money, and that he did not know the dates or amounts of any of the loans. Hoehn further testified that ,as of the date of the July 12, 2010 deposition, he was not living in the decedent's house and that, since he became owner of the property on October 16, 2009, he had slept there less than 10 times and had never moved into the same.

---

[3] On June 11, 2010, appellant signed an affidavit in which he indicated that he did not provide Hoehn with the funds to purchase the real property and did not remember signing the errata sheet.  The same was attached to appellant's brief in opposition to the Motions to Remove Fiduciary and to Vacate Judgment Approving Sale of Real Estate.

{¶28} Based on the foregoing, we find that the trial court did not abuse its discretion in finding that appellee R.S. was entitled to relief under Civ.R. 60(B)(3) and granting appellee R.S.'s motion to vacate the judgment approving the sale of the real property. Appellee R.S. is entitled to present a defense that appellant violated his fiduciary duty and engaged in self dealing with respect to the sale of the property. Moreover, as noted by the trial court in its decision, "[w]hile under oath [appellant] has given contradictory and conflicting accounts relating to the real property transaction and the proceeds garnered from this transaction. Attorney Patterson's deposition contradicts [appellant's] assertion that he does not remember reading or signing the errata sheet."

{¶29} As is stated above, appellant also argues that the trial court erred in granting the motion to vacate the judgment approving reimbursement.

{¶30} As is stated above, appellant, on October 20, 2009, filed a Motion for Reimbursement, seeking reimbursement of $60,820.26 for attorney fees that he had personally advanced to a law firm for representation in the lawsuit filed by appellee R.S. Attached to appellant's motion were copies of checks and/or receipts showing that appellant had paid such amount to the law firm. There is no indication that a copy of the Motion for Reimbursement was served on anyone. The trial court scheduled a hearing on such motion for December 16, 2009, and did not serve a copy of the notice setting the hearing on appellee R.S. or her counsel. Pursuant to a Judgment Order filed on November 16, 2009, the trial court granted such motion.

{¶31} Thereafter, on March 26, 2010, appellee R.S., as a creditor of the estate, filed a Motion to Vacate the November 16, 2009 Judgment Order pursuant to Civ.R. 60(B). Appellee R.S., in her motion, indicated that she did not learn about the

reimbursement until March 23, 2010, when her counsel took appellant's deposition. Pursuant to a Judgment Order filed on October 7, 2010, the trial court granted such motion.

{¶32}   We note that while appellee filed a motion to vacate the judgment, she did not have to satisfy the requirements of Civ.R. 60(B). Trial courts have inherent authority to vacate a void judgment; thus a party who asserts a lack of jurisdiction by improper service does not need to meet the requirements of Civ.R. 60(B). *Patton v. Diem er* (1988), 35 Ohio St.3d 68, 518 N.E.2d 941, paragraph four of the syllabus; *Deutsche Bank Trust Co. Americas v. Pearlman,* 162 Ohio App.3d 164, 2005-Ohio-3545, 832 N.E.2d 1253, at ¶ 14.

{¶33}   Moreover, applying Civ.R. 60(B), we find that appellee's motion was filed within a reasonable time. While the order granting reimbursement to appellant was filed on November 16, 2009, the Motion to Vacate such order was filed on March 26, 2010.

{¶34}   We further find that appellee R.S. demonstrated that she had meritorious claims or defenses to present if relief was granted. R.C. 2117.02 states as follows: "An executor or administrator within three months after the date of his appointment shall present any claim he has against the estate to the probate court for allowance. The claim shall not be paid unless allowed by the court. When an executor or administrator presents a claim amounting to five hundred dollars or more, the court shall fix a day not less than four nor more than six weeks from its presentation, when the testimony touching it shall be heard. The court forthwith shall issue an order directed to the executor or administrator requiring him to give notice in writing to all the heirs, legatees, or devisees of the decedent interested in the estate, and to the creditors named in the

order. The notice shall contain a statement of the amount claimed, designate the time fixed for hearing the testimony, and be served upon the persons named in the order at least twenty days before the time for hearing. If any persons mentioned in the order are not residents of the county, service of notice may be made upon them by publication for three consecutive weeks in a newspaper published or circulating in the county, or as the court may direct. All persons named in the order shall be parties to the proceeding, and any other person having an interest in the estate may be made a party."

{¶35} R.C. 2117.06 provides that all creditors having claims against an estate, including claims arising out of tort, shall present their claims in one of the specified manners. As is stated above, appellee R.S. presented a claim against the estate pursuant to 2117.06 on May 22, 2008. A claim remains pending unless rejected. R.C. 2117.06. As a potential creditor, appellee R.S. was entitled to notice of appellant's request for reimbursement and also notice of the hearing scheduled on the same. She received neither. We find, therefore, that the trial court did not abuse its discretion in holding that she was entitled to relief based on surprise pursuant to Civ. R. 60(B)(1).

{¶36} Moreover, appellee R.S. had a meritorious defense to present if relief is ganted. Appellee R.S. has a meritorious defense in that, under R.C. 2117.01 and 2117.25, appellant's own claim as administrator was not entitled to any preference over appellee R.S.'s claim. As noted by the trial court, appellee R.S. "is entitled to present her defense that [appellant's] claim is not entitled to preference over her potential tort claim."

{¶37} Appellant's first assignment of error is, therefore, overruled.

II

{¶38} Appellant, in his second assignment of error, argues that the trial court abused its discretion in removing him as administrator pursuant to R.C. 2109.24 and 2109.44. We disagree.

{¶39} Our standard of reviewing a Probate Court's decision to remove a fiduciary or guardian is the abuse of discretion standard. *In Re: Estate of Russolillo* (1990), 69 Ohio App.3d 448, 590 N.E.2d 1324. The Supreme Court has repeatedly defined the term abuse of discretion as implying the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. In applying the abuse of discretion standard, this court may not substitute our judgment for that of the trial court. *Pons v. Ohio State Medical Board* 66 Ohio St.3d 619, 621, 1993-Ohio-122, 614 N.E.2d 748.

{¶40} R.C. 2109.24 states, in relevant part, as follows: "The court may remove any fiduciary, after giving the fiduciary not less than ten days' notice, for habitual drunkenness, neglect of duty, incompetency, or fraudulent conduct, because the interest of the property, testamentary trust, or estate that the fiduciary is responsible for administering demands it, or for any other cause authorized by law." In turn, R.C. 2109.44 states as follows: "Fiduciaries shall not buy from or sell to themselves nor shall they in their individual capacities have any dealings with the estate, except as expressly authorized by the instrument creating the trust and then only to the extent expressly permitted by section 1111.13 or 1111.14 of the Revised Code or with the approval of the probate court…"

{¶41} We find that the trial court's decision to remove appellant as fiduciary was not arbitrary, unconscionable or unreasonable. There was evidence before the trial court that appellant had violated his fiduciary duties and engaged in self-dealing. As is stated above, there was evidence before the court that appellant had arranged for a straw man, Mike Hoehn, to purchase the decedent's property using appellant's money and then later to quit-claim the same back to appellant. Appellant admitted signing an errata sheet after his deposition in which he stated that he had approached Mike Hoehn and asked him if he would be willing to put the house in Hoehn's name if appellant gave him the money and then later quit-claim the same back to appellant. Appellant also admitted that he provided the funds for the purchase. The errata sheet was notarized by appellant's counsel.

{¶42} While appellant, at the July 14, 2010, hearing, testified that he owed money to Hoehn and that the money he provided to Hoehn to purchase the house was in repayment of various loans, significantly, Hoehn, at the August 23, 2010,[4] hearing, was unable to remember the amounts of the loans or to provide any documentation. The following is an excerpt from Hoehn's testimony at the August 23, 2010 hearing before the trial court:

{¶43} "Q. Let's talk about the money that you claim that you are borrowing to Robert Karder. How much in total did you loan to Robert Karder?

{¶44} "A. Around a hundred and fifty five thousand dollars. I don't know actually. I never kept a record of it.

{¶45} "Q. When did you make the first loan?

---

[4] The Court, at the August 23, 2010, hearing indicated that it would be relying also on the testimony from the July 14, 2010, hearing.

{¶46} "A. It had to be ten, fifteen years ago.

{¶47} "Q. Why did you make the first loan?

{¶48} "A. He was needing some money.

{¶49} "Q. Why did he need money?

{¶50} "A. I guess his was all tied up in some stocks. I don't know why he needed it.

{¶51} "Q. Was there any writing or documentation at the time of the loan?

{¶52} "A. I never made any.

{¶53} "Q. Why not?

{¶54} "A. It wasn't necessary.

{¶55} "Q. How much was that first loan?

{¶56} "A. I don't know.

{¶57} "Q. When did you make the second loan?

{¶58} "A. I don't know. I have no dates. I couldn't tell you any dates.

{¶59} "Q. How much was the second loan?

{¶60} "A. I don't know.

{¶61} "Q. Was there any writing?

{¶62} "A. No.

{¶63} "Q. No documentation?

{¶64} "A. No documentation.

{¶65} "Q. When was the third loan?

{¶66} "A. I don't know.

{¶67} "Q. Do you know the amount of that loan?

{¶68} "A. I don't have any dates or exact amounts.

{¶69} "Q. Can you tell us the dates, amounts, of any loans?

{¶70} "A. No, I never kept track.  I didn't think it was necessary.

{¶71} "Q. Do you know if anyone was keeping track of those loans?

{¶72} "A. At the time, no.

{¶73} "Q. Why do you say at the time?

{¶74} "A. Cause when I made them I didn't write down and I didn't see him write it down.

{¶75} "Q. Then how do you have any idea that the total of approximately, when you said, repeat again, I'm sorry, how much did you say you loaned to him?

{¶76} "A. Close to a hundred and fifty five.

{¶77} "Q. How do you have any idea that that is accurate?

{¶78} "A. Bob told me how much it was.

{¶79} "Q. When did Bob tell you that?

{¶80} "A. When he was probably giving me the money back he said he wanted to pay the money back to what he owed me."  Transcript of August 23, 2010 hearing at 21-23.

{¶81} As noted by the trial court in its October 7, 2010 Judgment Entry:

{¶82} "Karder has not been forthcoming with the Court surrounding the sale of the Athens Avenue real estate and has given conflicting accounts regarding the circumstances surrounding the sale of the real estate while under oath.  Karder does not dispute that it was his signature on the errata sheet although he now claims that the

errata sheet that he submitted was not correct. Attorney Patterson's deposition contradicts Karder's assertion that he does not remember reading or signing the errata sheet.

{¶83} "Karder introduced evidence in the form of the testimony of Hoehn to support his position. However, the Court does not find Hoehn to be a credible witness. Hoehn cannot remember when he made the loans to Karder and cannot remember the amounts of the loans. Hoehn has no record or documentation of the loans and did not see or know that Karder was writing down the loan amounts. Hoehn only knew the amount of the loans because Karder told Hoehn that amount, which was the same amount that Karder was going to receive for the sale of the Athens Avenue home.

{¶84} "Further evidence also displays Karder's lack of candor to the Court regarding the Athens Avenue transaction. Although Hoehn purchased the Athens Avenue home in October of 2009, he does not live there. He has only spent approximately ten nights in the home since October of 2009. Karder lives in the Athens Avenue home and although he is 'fixing up' the home, Hoehn testified that the only work Karder has done is some clean-up and landscaping. Hoehn testified that there is no reason why he could not have moved into the Athens Avenue home. Hoehn testified that he has not paid or hired Karder to do any work at the Athens Avenue home.

{¶85} "Thus, Karder has misrepresented and failed to disclose material facts to the court regarding the funds utilized to complete the real estate transaction and the fact that the funds came from Karder himself. Accordingly, the court finds that it is in the best interest of the estate to remove Robert Karder as Administrator."

{¶86} The underlying rationale for deferring to the trier of fact is that the trier of fact is best positioned to view the witnesses, to observe demeanor, gestures and voice inflections and to use those observations to weigh witness credibility. See *Myers v. Garson*, 66 Ohio St.3d 610, 615, 1993-Ohio-9, 614 N.E.2d 742; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Clearly, the trial court did not find Mike Hoehn's testimony credible.

{¶87} Appellant's second assignment of error is, therefore, overruled.

{¶88} Accordingly, the judgment of the Stark County Court of Common Pleas, Probate Division, is affirmed.


By: Edwards, J.

Hoffman, P.J. and

Delaney, J. concur


_____


_____


_____

                                                JUDGES

JAE/d0419

[Cite as *Estate of Karder* , 2011-Ohio-3229.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN RE THE ESTATE OF          :
JOE MICHAEL KARDER,       :
DECEASED                 :
                           :
                           :
                           :
                           :
                           :      JUDGMENT ENTRY
                           :
                           :
                           :
                           :      CASE NO. 2010CA00297

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Probate Division, is affirmed. Costs assessed to appellant.

_____

_____

_____

                        JUDGES