[Cite as *State v. Burner*, 2020-Ohio-2930.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180516 |
| | | TRIAL NO. 16CRB-2559 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| BOBBY BURNER, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  May 13, 2020

*Paula Boggs Muething*, City Solicitor, *Natalia Harris*, City Prosecutor, and *Jon Vogt*, Appellate Director, for Plaintiff-Appellant,

*Raymond T. Faller,* Hamilton County Public Defender, and *David Hoffmann,* Assistant Public Defender*,* for Defendant-Appellee.

**BERGERON, Judge.**

{¶1}   In 2018, defendant-appellee Bobby Burner sought to collaterally attack his 2016 conviction for sexual imposition, positing that he lacked the requisite competency at the time of his trial.  Because this case originated in municipal court, the statute for postconviction relief (R.C. 2953.21) does not apply, and Mr. Burner instead turned to Civ.R. 60(B) through the vehicle of Crim.R. 57(B).  To support this application, he presented an expert, but she confessed that she could not render a competency opinion concerning his status in 2016.  The trial court nevertheless granted relief under Civ.R. 60(B), erasing Mr. Burner's conviction, which prompted the state to appeal.  Because the court failed to apply the Civ.R. 60(B) standard, and Mr. Burner cannot satisfy it in any event, we are compelled to reverse its judgment.

I.

{¶2}   In July 2016, after a trial, the municipal court found Mr. Burner guilty of sexual imposition, requiring him to register annually for 15 years as a Tier I sex offender.  Notably, Mr. Burner never appealed this conviction.  Roughly a year and a half later, in January 2018, Mr. Burner ran into trouble with the law once again, this time charged with criminal damaging, violating a protection order, and failure to verify his current address (a Tier I registration requirement).  During these 2018 proceedings, Mr. Burner's competency emerged as an area of concern, leading to Dr. Carla Dreyer's evaluation of his competency to stand trial.  After meeting with Mr. Burner twice and conducting various tests, Dr. Dreyer opined that he was incompetent, "due to his below average intellect and probable intellectual disability," but restorable.  Another expert reached a similar result, with Dr.

2

Stuart Bassman also deeming him incompetent to stand trial. In February 2018, based upon these findings, the court found Mr. Burner incompetent and accordingly ordered him to undergo treatment at the Southwest Ohio Developmental Center.

{¶3} Armed with these diagnoses, in May 2018, Mr. Burner filed a petition for postconviction relief and a concomitant request for an evidentiary hearing, challenging the effectiveness of his 2016 trial counsel for the failure to raise his competency and asserting a due process violation. After reviewing Ohio caselaw that provides that municipal courts lack authority under the postconviction statutes, Mr. Burner later amended and reframed his petition, requesting the court to instead vacate his conviction pursuant to Crim.R. 57(B) and Civ.R. 60(B)—still under ineffective assistance and due process grounds. *See State v. Smith*, 2016-Ohio-3521, 68 N.E.3d 114, ¶ 18 (1st Dist.), citing *State v. Cowan*, 101 Ohio St.3d 372, 2004-Ohio-1583, 805 N.E.2d 1085, ¶ 10 ("The postconviction statutes require that a postconviction petition be filed with the court that sentenced the petitioner and confer jurisdiction over a postconviction petition only upon a common pleas court."); *State v. Black,* 1st Dist. Hamilton No. C-070546, 2008-Ohio-3790, ¶ 8 ("[Defendant] was sentenced by the municipal court. Therefore, the postconviction statutes did not afford him a means for securing relief from his conviction."). Ultimately, the municipal court found the motion warranted an evidentiary hearing, postponing a ruling on the merits until after the presentation of evidence. In the meantime, the court ordered an expert to evaluate Mr. Burner's competency at the time of the 2016 trial.

{¶4} The evidentiary hearing commenced in August 2018, with Mr. Burner offering testimony from his former probation officer, Dan Heithaus, and Dr. Dreyer in support of his application. Officer Heithaus testified about his interactions with Mr. Burner in 2016,

3

specifically noting Mr. Burner's trouble understanding his registration requirements as a sex offender and an incident where he provided an incorrect home address. The focal point of the hearing, however, was Dr. Dreyer, who previously opined on Mr. Burner's competency during the 2018 proceedings. But when confronted with the 2016 timeframe, she proved unable to render an opinion, candidly acknowledging that she was "unable to provide an opinion, to a reasonable degree of psychological certainty" as to Mr. Burner's competency at that time. Clarifying her reluctance to proffer an expert opinion, Dr. Dreyer emphasized that Mr. Burner rarely spoke during the 2016 proceedings, creating limited evidence as to his competency in 2016, and that his substance abuse between the two proceedings muddied the waters, generating uncertainty as to whether his measured intellect in 2018 existed to the same extent in 2016. As best we can tell from the record, Dr. Dreyer did not have the opportunity to discuss these issues with Mr. Burner's 2016 attorney, who might have been able to shed light on his condition at that time.

{¶5}    In response to this evidence, the state poked both procedural and substantive holes in the defense's case, maintaining that Mr. Burner failed to file his motion within a reasonable time, as required under Civ.R. 60(B), and failed to establish his ineffective assistance of counsel and due process claims. The state also seized upon Dr. Dreyer's inability to render an opinion as a testament to Mr. Burner's failure to meet his burden.

{¶6}    Ultimately, the municipal court found Mr. Burner incompetent to stand trial during his 2016 proceedings, and, without engaging in any Civ.R. 60(B) analysis, vacated his sexual imposition conviction. The state now appeals this entry, raising three assignments of error. In its first and second assignments of error, the state asserts that the court erred when it failed to apply res judicata to Mr. Burner's motion and when it

conducted a hearing on his competency. As to its third assignment, the state alleges the court abused its discretion in granting Mr. Burner's motion pursuant to Crim.R. 57 and Civ.R. 60.

## II.

{¶7} We begin with the state's third assignment of error since we find it dispositive of this appeal. In its third assignment, the state (in part) asserts that the court erred in granting Mr. Burner's motion to vacate his conviction because he did not satisfy the necessary elements under Civ.R. 60(B). But before we dive in, we pause to note the unusual nature of this case—vacating a conviction through the tools of Crim.R. 57(B) and Civ.R. 60(B). The postconvictions statutes, as mentioned above, do not confer jurisdiction over postconviction petitions upon municipal courts, but only upon common pleas courts. *See Cowan*, 101 Ohio St.3d 372, 2004-Ohio-1583, 805 N.E.2d 1085, at ¶ 20 ("Accordingly, we hold that a municipal court is without jurisdiction to review a petition for post-conviction relief filed pursuant to R.C. 2953.21."); *State v. Zupancic*, 9th Dist. Wayne No. 12CA0065, 2013-Ohio-3072, ¶ 5 ("Because [defendant's] conviction arises from municipal court proceedings, however, postconviction relief is not available to her."). Because this leaves offenders convicted in municipal court without a statutory procedure to seek relief from their convictions based on evidence outside the record, Ohio courts invoke Crim.R. 57 and Civ.R. 60 to fashion a comparable remedy. *See Smith*, 2016-Ohio-3521, 68 N.E.3d 114, at ¶ 19 ("[B]ecause the criminal rules provide no procedure for an offender convicted in municipal court to seek relief from his conviction based on evidence outside the record, Crim.R. 57(B) permits the offender to seek relief under Civ.R. 60(B)(5).").

{¶8}    Crim.R. 57(B) provides that "[i]f no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules of criminal procedure, and shall look to the rules of civil procedure and to the applicable law if no rule of criminal procedure exists."  With our gaze shifted to the rules of civil procedure, Ohio courts recognize that Civ.R. 60(B) affords defendants convicted by a municipal court an opportunity to seek relief from their convictions.  *See Miller v. Walton,* 163 Ohio App.3d 703, 2005-Ohio-4855, 840 N.E.2d 222, ¶ 17 (1st Dist.) ("It follows that Civ.R. 60(B) may afford a criminal defendant relief from a judgment of conviction."); *State v. Denihan*, 11th Dist. Ashtabula No. 2016-A-0003, 2016-Ohio-7443, ¶ 19 ("Pursuant to Civ.R. 60(B), municipal courts may entertain motions to vacate their own judgments in criminal cases."). After prompting from the trial court, Mr. Burner invoked Crim.R. 57(B) and Civ.R. 60(B), consistent with this authority.  As a result, we must review Mr. Burner's motion to vacate his conviction through a Civ.R. 60(B) lens,[1] and accordingly apply an abuse of discretion standard to the court's decision.  *See State v. Lehrfeld*, 1st Dist. Hamilton No. C-030390, 2004-Ohio-2277, ¶ 6 ("In the proceedings below, [defendant] unambiguously invoked Civ.R. 60(B) in seeking relief from the prison sentence imposed for his community-control violation. Therefore, [defendant's] motion may not be recast as, or reviewed under the standards applicable to, a postconviction petition."); *Schaefer v. Mazii*, 2019-Ohio-3808,

---

[1] We pause to note that the Ohio Supreme Court in *State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431, held that a trial court may recast a motion for relief from judgment as a postconviction petition even when the defendant presented the motion unambiguously as a Civ.R. 60(B) motion. In doing so, the court noted that "it is not necessary to look to the Civil Rules or other applicable law for guidance in the way Crim.R. 57(B) intends, because a procedure 'specifically prescribed by rule' exists, i.e., Crim.R. 35." *Id.* at ¶ 12. However, we do not have such a situation here.  No criminal rule exists to address Mr. Burner's relief from his conviction entered by the municipal court, and therefore the Civ.R. 60(B) principles guide our analysis.

___ N.E.3d ___, ¶ 9 (1st Dist.) (applying abuse of discretion to the court's decision to grant a Civ.R. 60(B) motion).

{¶9} To prevail on a motion pursuant to Civ.R. 60(B), Mr. Burner must demonstrate that he (1) possesses a meritorious claim or defense to present if relief is granted, (2) is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5), and (3) submitted the motion within a reasonable time, construed as not more than a year removed from judgment when pursuing relief under Civ.R. 60(B)(1), (2), or (3). *See GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus. Mr. Burner bears the burden of proving his entitlement to relief pursuant to Civ.R. 60(B), requiring sufficient " 'factual material which on its face demonstrates the timeliness of the motion, reasons why the motion should be granted and that he has a [claim].' " *See State v. McComb*, 2d Dist. Montgomery No. 26481, 2015-Ohio-2556, ¶ 28, quoting *Adomeit v. Baltimore*, 39 Ohio App.2d 97, 103, 316 N.E.2d 469 (8th Dist.1974) (applying Civ.R. 60(B) standards to defendant's motion requesting the municipal court vacate his conviction). Notably, because he must satisfy each of these three *GTE* elements independently, a failure to fulfill one element proves fatal to the motion to vacate. *See Strack v. Pelton*, 70 Ohio St.3d 172, 174, 637 N.E.2d 914 (1994), citing *GTE* at 151 ("These requirements are independent and in the conjunctive; thus the test is not fulfilled if any one of the requirements is not met."). The trial court never evaluated any of these three criteria (contrary to the concurring opinion's suggestion), and although we must accord deference to its decision, it must provide us some basis to understand how it exercised its discretion.

{¶10} Turning to the first prong, Mr. Burner proposed two related claims below, painting his trial counsel in 2016 as ineffective by failing to raise the competency issue, and portraying this as a due process violation as well. But the evidentiary hearing glossed over these points, with Mr. Burner jumping straight into the competency analysis. In order to establish ineffective assistance of counsel, Mr. Burner needed to show that his trial counsel's performance was both deficient and prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). At no point during the hearing did Mr. Burner's previous trial counsel testify, nor did he tender any evidence showing that counsel should have appreciated a competency problem at that time. *See State v. Lampley*, 12th Dist. Butler No. CA2011-03-046, 2011-Ohio-6349, ¶ 22 (rejecting ineffective assistance claim based on competency where nowhere in the record did evidence reveal difficulty in communication between defendant and counsel, and, in fact, counsel told the trial court that, based upon his conversations with defendant, "he believed [defendant] was lucid and competent to stand trial."). Nor does it appear that Dr. Dreyer interviewed Mr. Burner's prior trial counsel in her competency review.

{¶11} The failure to tie any deficiency to the ineffective assistance standard assumes more importance in light of Mr. Burner's lack of evidence of his incompetence in 2016. Without any expert conclusion in this regard, he points to his practice of acquiescence—a proclivity for certain individuals with intellectual disabilities to agree with whatever is said in order to please those around them. To be sure, his responses to the court's queries in 2016 are affirmative and curt, but not noticeably different from how other criminal defendants respond to similar questioning. An expert or someone involved in the 2016 proceedings would need to connect those dots to remove this from the realm of speculation.

Similarly, Mr. Burner maintains that his statistically similar IQ test scores between 2005 (when in high school) and 2018, his failure to understand his sex offender registration requirements, and the incident where he provided his probation officer with an incorrect street address all demonstrate his incompetency in 2016. These points similarly seem to fall short of establishing the legal standard for incompetency: because of the defendant's mental condition, he or she is "incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense[.]" R.C. 2945.37(G). Yes, he exhibited some signs of confusion, but this, standing alone, generally will not suffice to establish incompetency. *See State v. Jones*, 1st Dist. Hamilton No. C-050112, 2006-Ohio-2339, ¶ 14 (rejecting argument that defendant's "confusion" showed incompetence: "[defendant] may have been confused as to how he violated his community control, but he was not incompetent.").

{¶12} Although we harbor doubts about the first step in the Civ.R. 60(B) analysis, we ultimately need not answer whether Mr. Burner satisfied that prong in light of our disposition regarding the timeliness requirement. The concurrence indicates that we are grasping onto this issue sua sponte, but the state challenged timeliness from the opening bell of this motion.

{¶13} Mr. Burner fastened his ineffective assistance and due process claims to Civ.R. 60(B)(5), which allows relief from "the unjust operation of a judgment," but is only available in "extraordinary circumstances." *Melton v. Melton*, 1st Dist. Hamilton No. C-130123, 2013-Ohio-4790, ¶ 12. Notably, Civ.R. 60(B)(5) is a "catch-all" provision, only providing refuge when the other expressly enumerated grounds do not apply. *Caruso-Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64, 448 N.E.2d 1365 (1983), paragraph one of the

syllabus ("Civ.R. 60(B)(5) is intended as a catch-all provision reflecting the inherent power of a court to relieve a person from the unjust operation of a judgment, but it is not to be used as a substitute for any of the other more specific provisions of Civ.R. 60(B)."). While Civ.R. 60(B)(5) does not prescribe an exact timeline, it necessitates filing within a "reasonable time." Civ.R. 60(B); *see Zwahlen v. Brown*, 1st Dist. Hamilton No. C-070263, 2008-Ohio-151, ¶ 12 ("A 'reasonable time' for mistake, newly discovered evidence, and fraud is not more than one year, but the rule does not specify what constitutes a 'reasonable time' for seeking relief under Civ.R. 60(B)(5)."). Perhaps needless to say, parties "cannot use the 'catch-all' provision of Civ.R. 60(B)(5) as a substitute for the more specific grounds set forth in Civ.R. 60(B)(1), (2) or (3), to avoid the one-year filing requirement." *Osting v. Osting*, 6th Dist. Ottawa No. OT-07-033, 2009-Ohio-2936, ¶ 13; *see Hall v. Hall*, 2d Dist. Greene No. 2017-CA-12, 2017-Ohio-7932, ¶ 47, quoting *Jackson v. Hendrickson*, 2d Dist. Montgomery No. 21921, 2008-Ohio-491, ¶ 51 ("Consequently, 'a party cannot use Civ.R. 60(B)(5) to circumvent the one-year limitation by duplicating grounds that are subject to the limitation.' ").

{¶14} That admonition rings true here, as we view Mr. Burner's Civ.R. 60(B)(5) arguments as indistinguishable from those that would be presented under Civ.R. 60(B)(2), which provides relief from judgment based upon "newly discovered evidence which in the exercise of due diligence could not have been discovered in time for trial." *State v. Noling*, 11th Dist. Portage No. 2007-P-0034, 2008-Ohio-2394, ¶ 108. Despite citing Civ.R. 60(B)(5) in his motion, Mr. Burner essentially requested below that the court grant relief based upon newly discovered evidence—specifically, Dr. Dreyer's and Officer Heithaus's testimony—which he asserts demonstrates his incompetency in 2016, rendering his counsel ineffective

and his due process rights violated. He admits as much in his brief: "[T]he amended postconviction motion was based upon *new evidence* in the form of Dr. Dreyer's testimony and [her] report that was cogent, outside the record, and demonstrated a substantive ground for relief." (Emphasis added.) But he filed his claim for relief nearly two years after the underlying judgment. That time period also almost doubles that allotted for postconviction petitions in cases arising from common pleas courts. *See* R.C. 2953.21(A)(2).

{¶15} Indeed, the criminal cases featured by the concurrence reinforce our conclusion. In *State v. Dodson*, 10th Dist. Franklin No. 03AP-306, 2004-Ohio-581, the court found a one-year delay (i.e., half of the time period at issue here) unreasonable. In *State v. Jones*, 11th Dist. Ashtabula No. 2001-A-0072, 2002-Ohio-6914, the court never considered the timeliness aspect of the Civ.R. 60(B) analysis, but instead found the claim barred based on the lack of substantiation that the "new" evidence could not have been marshalled at the time of trial. *Id.* at ¶ 20-24. That case, like this one, contained no evidence that trial counsel actually dropped the ball, *id.* at ¶ 23—and underscoring that point here, Mr. Burner never fleshed out the ineffective assistance claim below or on appeal. He instead focused solely on new evidence of competency rather than on any ineffective assistance claim. Accordingly, on these facts and given the nature of the claim for relief, we believe that Mr. Burner's almost two-year delay in seeking postjudgment relief was unreasonable.

{¶16} Although the trial court did not conduct a Civ.R. 60(B) analysis, if it had, it would have abused its discretion in finding Mr. Burner's motion timely on the state of this record. That is enough to warrant reversal. *See McComb*, 2d Dist. Montgomery No. 26481, 2015-Ohio-2556, at ¶ 34 ("However, [defendant] failed to meet two of the other necessary

11

requirements for Civ.R. 60(B) relief. One such failure is fatal[.]"). Accordingly, we sustain the state's third assignment of error.

III.

{¶17} For the foregoing reasons, we hold that the court erred when it granted Mr. Burner's motion to vacate his sexual imposition conviction pursuant to Civ.R. 60(B), and accordingly we sustain the state's third assignment of error. Our disposition of the state's third assignment of error renders its first and second assignments of error moot. We, therefore, reverse the trial court's judgment granting Mr. Burner's motion pursuant to Crim.R. 57(B) and Civ.R. 60(B) and remand the cause for the court to enter judgment denying relief.

Judgment reversed and cause remanded.

**Mock, P. J.,** concurs.
**Zayas, J.,** concurs in judgment only.

**Zayas, J.,** concurring in judgment only.

{¶18} Mr. Burner asserted that his trial counsel was ineffective for failing to request a competency hearing after he was found incompetent and unrestorable. As Dr. Dreyer explained, his cognitive abilities were so deficient, "if we took a hundred people and gave them a test, you're going to have him scoring below the – the first percentile, meaning that he is the lowest. There will be 99 people ahead of him with higher scores." With an IQ below the 1st percentile, first documented in 2005, Mr. Burner questioned his former counsel's efforts in representing him. Instead of addressing this issue, the majority exceeds this court's authority by going beyond the legal issues properly before it and misconstrues the appellee's brief to achieve its desired result. Accordingly, I concur in judgment only.

**Newly Discovered Evidence**

{¶19} During the proceedings, all parties litigated the motion under Civ.R. 60(B)(5), yet, the majority now claims that the motion was actually based on newly discovered evidence under Civ.R. 60(B)(2). But, there are two glaring problems with this determination. First, the state did not raise this issue below, and we will "not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21. Equally concerning, the state did not raise this issue on appeal, nor did the parties brief the issue. The words "new evidence" or "newly discovered evidence" do not appear in the transcript of the arguments or in the state's brief.[2] The state did not argue that the motion should have been recast as a Civ.R. 60(B)(2) motion and overruled because it was not filed within a year.

{¶20} Second, the majority latches onto one sentence in Mr. Burner's brief, takes it out of context, and claims that Mr. Burner admits that the motion was "based upon new evidence in the form of Dr. Dreyer's testimony and [her] report that was cogent, outside the record, and demonstrated substantive grounds for relief." However, that sentence was in response to the state's argument that res judicata barred the motion.

{¶21} Mr. Burner correctly argued that res judicata did not apply because the motion presented evidence outside of the trial court record, and therefore, could not have been raised on direct appeal. *See State v. Jones*, 11th Dist. Ashtabula No. 2001-A-0072, 2002-Ohio-6914, ¶ 17 (explaining that res judicata does not apply when the defendant

---

[2] The state did not file a written response to Mr. Burner's motion.

presents relevant evidence outside of the record).[3]  Yet, the majority misconstrues the res judicata argument into an admission that the motion itself was based on newly discovered evidence.

**{¶22}**  The basis for Mr. Burner's motion was Civ.R. 60(B)(5).  Mr. Burner asserted that his trial counsel was ineffective for failing to ask for a competency evaluation at the time of trial because an evaluation would have shown that he was incompetent, and he would not have been tried or convicted.  Mr. Burner asserted that he did not discover his counsel's deficient performance due to his own intellectual limitations.  Mr. Burner further argued that had his counsel been diligent, his incompetency would have been established at the time of trial.

**{¶23}**  "[I]n order to succeed on a Civ.R. 60(B)(2) motion, the moving party must show not only that the evidence was 'newly discovered' and that the movant exercised 'due diligence,' but the movant must also demonstrate to the trial court how this evidence is 'material,' and that it would probably have produced 'a different result.' " *First Fin. Servs., Inc. v. Cross Tabernacle Deliverance Church, Inc.*, 10th Dist. Franklin No. 06AP-404, 2007-Ohio-4274, ¶ 59, quoting *Holden v. Ohio Bur. of Motor Vehicles*, 67 Ohio App.3d 531, 540, 587 N.E.2d 880 (9th Dist.1990).  To qualify as newly discovered evidence, the evidence must not have been discoverable by due diligence within the time limits set forth for a motion for a new trial under Civ.R. 59(B).  *See* Civ.R. 60(B)(2); *Carnes v. Carnes*, 2015-Ohio-2925, 38 N.E.3d 1214, ¶ 19 (1st Dist.).

---

[3] I do not address the first assignment of error because the state failed to raise it below and has waived the argument on appeal.  *See Nationstar Mtg., L.L.C. v. Young*, 9th Dist. Summit No. 27499, 2015-Ohio-3868, ¶ 5.  I do not address the second assignment of error because the state did not object to the hearing, and instead only argued the merits.  *See id.*

{¶24} Here, Mr. Burner's competency could have been discovered prior to trial with reasonable diligence. *See Cuyahoga Support Enforcement Agency v. Guthrie*, 84 Ohio St.3d 437, 442, 705 N.E.2d 318 (1999) (explaining that Civ.R. 60(B)(2) is not applicable to a paternity test result when the testing was available at the time of the initial paternity determination. "Consequently, it does not meet the definition of newly discovered evidence because it could have been discovered by due diligence in time to move for a new trial."). Had Mr. Burner's trial counsel requested a competency evaluation in 2016, his incompetency would have been established at that time.

{¶25} This is precisely why Mr. Burner filed the motion pursuant to Civ.R. 60(B)(5). Motions alleging ineffective assistance of counsel in a criminal case are properly raised under Civ.R. 60(B)(5). *See State v. Jones*, 11th Dist. Ashtabula No. 2001-A-0072, 2002-Ohio-6914, ¶ 13 (concluding that "appellant could properly seek relief from judgment under Civ.R. 60(B)(5) for ineffective assistance of counsel."); *State v. Dodson*, 10th Dist. Franklin No. 03AP-306, 2004-Ohio-581, ¶ 10 (finding that "[f]or purposes of Civ.R. 60(B), appellant's ineffective assistance of counsel claims would fall under the 'any other reason justifying relief from judgment' grounds set forth in Civ.R. 60(B)(5).' "). Thus, the trial court properly analyzed the petition under Civ.R. 60(B)(5).

### Standard of Review

{¶26} The majority acknowledges that we review the court's decision for an abuse of discretion, but inexplicably, and without any legal authority, concludes that "[t]he trial court never evaluated any of the [60(B)] criteria" and "it must provide us some basis to understand how it exercised its discretion." If the record supports the trial court's decision, it is not an abuse of discretion. *Lottridge v. Gahanna-Creekside Invests., L.L.C.*, 2015-

Ohio-2168, 36 N.E.3d 744, ¶ 31 (10th Dist.).  Moreover, findings of fact and conclusions of law are not required in Civ.R. 60(B) decisions.  *See* Civ.R. 52; *Briggs v. Deters*, 1st Dist. Hamilton No. C-961068, 1997 WL 346039, *2 (June 25, 1997).

{¶27}  When applying the abuse-of-discretion standard, this court may not substitute its judgment for that of the trial court.  *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).  The phrase " 'abuse of discretion' * * * implies that the trial court's attitude [was] unreasonable, arbitrary or unconscionable."  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).  An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact."  *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

### The Ruling on the Merits

{¶28}  In order to prevail on a motion brought pursuant to Civ.R. 60(B), "the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceedings was entered or taken."  *GTE Automatic Electric Inc. v. ARC Industries Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus.

### 1. Timeliness

{¶29}  Although motions for relief under Civ.R. 60(B)(5) are not governed by a fixed time limit, they must still be brought within a reasonable time after entry of judgment. Civ.R. 60(B).  Whether a Civ.R. 60(B) motion is filed within a reasonable time depends on

16

the facts and circumstances of the particular case. *Herlily Moving and Storage, Inc. v. Nichison*, 10th Dist. Franklin No. 09AP-831, 2010-Ohio-6525, ¶ 14, citing *Scotland Yard Condominium Assn. v. Spencer*, 10th Dist. Franklin No. 05AP-1046, 2007-Ohio-1239, ¶ 33.

{¶30} Here, Mr. Burner filed his motion 21 months after his conviction, and one month after the court found him incompetent and unrestorable. He further argued that his own incompetence prohibited him from discovering his trial counsel's ineffectiveness and from filing the motion sooner.

{¶31} The majority is correct that the state challenged the timeliness, however, the record is clear that the prosecutor specifically argued "under the Civil Rule 60(B)(5), I believe that's where we're at, these motions have to be filed within a reasonable time for those sorts of motions." The trial court rejected its argument and found that the motion was timely, especially in light of the fact that Mr. Burner was still required to comply with the registration component of his sentence. Based on these facts and circumstances, I cannot conclude that the trial court abused its discretion in finding the motion was filed within a reasonable time.

{¶32} The majority concludes that the 21-month delay was unreasonable, but it fails to analyze the specific facts and circumstances of this case in reaching its decision. Instead, it relies on *Dodson*, a case where the "[a]ppellant failed to provide any explanation for this delay," *State v. Dodson*, 10th Dist. Franklin No. 03AP-306, 2004-Ohio-581, ¶ 11, and *Jones*, a case where timeliness was not discussed because the petition was barred by res judicata, *State v. Jones*, 11th Dist. Ashtabula No. 2001-A-0072, 2002-Ohio-6914, ¶ 23, 25, 27. Neither case sheds any light on whether Mr. Burner's motion was timely.

## 2. Competency

{¶33} To support his claim, Mr. Burner submitted two court clinic reports for the trial court's review. Both reports noted that Mr. Burner presented as "an individual of substantially below average intellect." The first report was prompted by his felony and misdemeanor attorneys who were independently concerned about his competency after speaking with him in February 2018. Dr. Dreyer initially believed he was restorable, and he was placed in a residential treatment center. Ultimately, she concluded that Mr. Burner was not capable of comprehending the nature of the proceedings or instructions, assisting counsel to prepare a defense, or evaluating legal evidence "due to his below average intellect and probable intellectual disability."

{¶34} Dr. Dreyer's second report was an attempt to discern whether he was incompetent at the time of his trial in July 2016. She noted that Mr. Burner presented as low functioning in 2016 while on probation. According to her report, Mr. Burner had been referred to the Court Clinic in 2016 for a probation consultation. Dr. Dreyer determined that his verbal reasoning abilities, his ability to process novel information, his ability to use information, attend, and concentrate, and his full scale IQ were all below the 1st percentile and were in the "Extremely Low" range. These scores were consistent with his test scores in 2005. Dr. Dreyer further opined that the "available collateral information suggests that the defendant's current intellect is similar to that of his 2016 legal proceedings" and "the defendant's measured intellect has not likely changed significantly since 2016" and "his current presentation raises concerns about his ability to [comprehend instructions and evaluate legal advice] in 2016."

{¶35} At the hearing, she testified that Mr. Burner was incapable of understanding

the nature of the proceedings because his cognitive limitations prevented him from understanding. Although she could not determine with certainty whether Mr. Burner was incompetent in 2016, she explained that "he was substantially below average intellect, had cognitive difficulties that were apparent in the evaluation, but also historically noted, and they were consistent across time." She further opined that Mr. Burner's ability to comprehend abstract legal concepts was very poor due to his intellectual limitations which were reflected in his 2005 and 2018 scores in the 1st percentile on the "Working-Memory Index." Although alcohol and marijuana abuse was one reason that his functioning could potentially have been different in 2016, she stressed that this scenario was only a possibility, and that intellectual disability is less likely to change significantly over time absent a head injury. Finally, Dr. Dreyer explained that Burner's test scores were consistently in the extremely low range, and the lower a person's intellectual functioning, the higher the probability the person will remain incompetent.

{¶36} In addition to testing Mr. Burner, Dr. Dreyer read the transcripts of the 2016 proceedings. She pointed out that Mr. Burner's attorney primarily spoke on behalf of Mr. Burner. The few times Mr. Burner spoke, he frequently acquiesced and responded to questions with, "Yes, sir." She explained that substantial research shows that individuals with intellectual disabilities frequently acquiesce and agree when they do not understand something because they do not want to draw attention to their intellectual limitations. Dr. Dreyer further testified that during the sentencing, Mr. Burner's only other response to the trial court was inappropriate, did not make sense, and it appeared that he did not understand what the court had said to him.

{¶37} At the sentencing hearing, Mr. Burner's trial counsel admitted that he had not

19

informed Mr. Burner about the registration requirements or attempted to explain the requirements to him. At that point, the trial court read the registration requirements to Mr. Burner. When asked if he understood, Mr. Burner replied, "Sir, yes, sir."

{¶38} Five days later, Burner reported to his probation officer, Mr. Heithaus. Based on his initial interaction with Mr. Burner, it was apparent to him that Mr. Burner was very limited intellectually and did not understand the registration requirements. Although Mr. Burner responded "yes" to Mr. Heithaus's explanation of the registration instructions, Mr. Heithaus did not believe Mr. Burner actually understood his requirements or where he needed to report. To make sure that Mr. Burner registered properly, Mr. Heithaus walked him to the sheriff's department to register. Once they arrived, Mr. Burner incorrectly recited his address, giving the wrong house number and street name. However, another officer who was present knew the correct address, so Mr. Heithaus pulled up the street on Google Maps so that Mr. Burner could point to his home.

{¶39} Throughout Mr. Heithaus's interactions with him, Mr. Burner responded to all of his questions with, "Yes, sir. Yes, sir." When Mr. Burner was served with a protection order, he did not understand what it meant or what was going on, so Mr. Heithaus had to explain it to him. Mr. Heithaus testified that Mr. Burner struggled to understand instructions and documents. Instead of expressing his lack of understanding, Mr. Burner merely responded, "Yes, sir." Mr. Heithaus testified that Burner presented as a low-functioning person with intellectual disabilities in 2016 and during his time on probation.

{¶40} Dr. Dreyer established that Mr. Burner's incompetency was due to his extremely low intellectual abilities, which had not changed since 2005. Moreover, she testified that Mr. Burner displayed indicia of incompetency at the 2016 sentencing hearing.

Throughout his interactions with his probation officer, he exhibited a limited ability to understand information and instructions. The record further reflects that Mr. Burner's intellectual limitations were readily apparent to Mr. Heithaus at the time of his conviction, and probation referred him to the Court Clinic in 2016 for an evaluation. Unquestionably, had Mr. Burner been found incompetent at the time, he would not have been tried and convicted.

{¶41} Under these circumstances, as the trial court found, Mr. Burner's incompetency and inability to comply with his registration requirements would result in repeated criminal charges and a significant penalty. I cannot conclude that the trial court's determination that Mr. Burner was incompetent was arbitrary, unconscionable or unreasonable because it is supported by the record.

### 3. Ineffective Assistance of Counsel

{¶42} A court will presume that a properly licensed attorney is competent, and the defendant bears the burden to show ineffective assistance of counsel. *State v. Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988). To sustain a claim for ineffective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶43} Here, Mr. Burner submitted no evidence that his trial counsel knew or should have known about Mr. Burner's incompetency. The testimony of Mr. Heithaus established that Mr. Burner's limited intelligence was readily apparent to him, but he also testified that he had experience supervising individuals with low IQ's. Nothing in this record suggests how or why his counsel would have been alerted to this issue. For example, none of his

21

current or former attorneys submitted affidavits or testified regarding their interactions, impressions or observations regarding Mr. Burner's extremely low IQ. Thus, Mr. Heithaus's testimony was insufficient to show that Mr. Burner's counsel should also have realized Mr. Burner's limitations.

{¶44} The record reflects that the trial court believed that the former attorney could not be questioned because Mr. Burner was incapable of waiving the attorney-client privilege. However, an ineffective assistance of counsel claim waives the attorney-client privilege. *See State v. Montgomery*, 2013-Ohio-4193, 997 N.E. 2d 579, ¶ 29 (8th Dist.). Absent any evidence in the record that Mr. Burner's former counsel knew or should have known about Mr. Burner's incompetency, the trial court abused its discretion in granting the motion.

## Conclusion

{¶45} Accordingly, I would sustain the third assignment of error, reverse the judgment of the trial court, and remand the cause for further proceedings.

Please note:

The court has recorded its own entry this date.