[Cite as *Schaefer v. Mazii*, 2019-Ohio-3808.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| PHILLIP JAMES SCHAEFER, | : | APPEAL NO. C-180484 |
| | | TRIAL NO. DR 1501352 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| TATIANA MAZII, | : | |
| Defendant-Appellee. | : | |

Appeal From:  Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 20, 2019

*Timothy A. Hickey*, for Plaintiff-Appellant,

*Maria K. Ante*, for Defendant-Appellee.

**BERGERON, Judge.**

{¶1}   In a case brimming with international intrigue and polygamy, we tackle today a procedural issue—whether the trial court correctly granted relief from judgment to enable one of the ex-wives at issue to reopen divorce proceedings in Hamilton County when she did not appear properly served and when the ex-husband neglected to inform the court of his multiple wives at the time he secured a default judgment.  On the facts at hand, the trial court properly exercised its discretion in granting the motion, and we accordingly affirm the judgment below.

## I.

{¶2}   Plaintiff-appellant Phillip Schaefer and defendant-appellee Tatiana Mazii have a complex, and well-traveled, history.  Beginning in 2005, the couple lived together on a Russian island located off the coast of Japan called Sakhalin.  Some years later (after having a child), in October 2014, the couple married in Kentucky.  Unbeknownst to Ms. Mazii, this was not Mr. Schaefer's only current marriage.  In fact, just a few months prior in May 2014, Mr. Schaefer married another woman, Valentina Maluygina, in Nevada.  And, to add insult to injury, Mr. Schaefer left out yet another small detail—he never finalized the divorce from his first marriage in May 1994 to Linda Schaefer.  In other words, when he married Ms. Mazii, he already had two wives.

{¶3}   Ms. Mazii discovered her husband's bigamous marriages just a few months after their own, stumbling upon email communications between Mr. Schaefer and Ms. Maluygina and learning that his first marriage never terminated.  At this point, Ms. Mazii and Mr. Schaefer lived in Hamilton County, but in the wake of this revelation, Ms. Mazii decamped for Sakhalin to the same abode where the couple previously resided together.  Notably, Ms. Mazii did not embark on the transatlantic journey alone, but took their son with her.

{¶4}   This ultimately set off an international chess match of litigation, with proceedings commenced in Bahrain, Russia, and here in Hamilton County.   In Bahrain, Mr. Schaefer had previously initiated an action to secure custody of their son, which the Bahrainian court granted.

{¶5}   With that order in hand, in July 2015, Mr. Schaefer filed for divorce in Hamilton County, obtaining service upon Ms. Mazii by publication (even though she resided in the same home they once lived in together, and he made no apparent effort to serve her under the Hague Convention or other governing protocol, *see* Civ.R. 4.5).   As part of the divorce, Mr. Schaefer sought recognition from Hamilton County regarding the Bahrain custody degree.   The domestic relations court obliged, registering the Bahrain custody degree, and thereby allowing the court to grant custody to Mr. Schaefer.   Over a year later, in December 2016, the court granted Mr. Schaefer's motion for a default judgment for divorce (Ms. Mazii never having appeared).

{¶6}   As if the situation were not convoluted enough, during this same time Ms. Mazii also gained her own custody order from yet another country, Russia, granting her custody of their son.   This created dueling inconsistent foreign judgments between Russia and Bahrain.   Ms. Mazii sent the Russian order to Mr. Schaefer, who responded to this volley by forwarding the divorce decree from Hamilton County.   Now alerted to the divorce proceedings in Hamilton County, Ms. Mazii promptly filed a motion for relief from judgment, asking the court set aside the divorce decree.   In turn, when Mr. Schaefer learned of the Russian custody order, he filed a petition in the Russian court, requesting that the court recognize the Hamilton County divorce decree.

{¶7}   Regarding the motion for relief from judgment, the Hamilton County Domestic Relations Court heard from the parties' attorneys (both parties living in foreign

3

countries at the time). After the hearing, the trial court concluded that, given the extraordinary circumstances, Ms. Mazii deserved relief pursuant to Civ.R. 60(B)(5), thereby granting her motion for relief from judgment.

{¶8}   Mr. Schaefer now appeals the setting aside of the divorce decree, asserting in his lone assignment of error that the trial court erred in granting Ms. Mazii's motion for relief from judgment pursuant to Civ.R. 60(B)(5).

## II.

{¶9}   We review a trial court's decision to grant a motion for relief from judgment for an abuse of discretion.  *Carnes v. Carnes*, 2015-Ohio-2925, 38 N.E.3d 1214, ¶ 10 (1st Dist.), citing *Strack v. Pelton*, 70 Ohio St.3d 172, 174, 637 N.E.2d 914 (1994).  We begin with Civ.R. 60(B), which provides that a court may relieve a party from a final judgment for: "(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial * * *; (3) fraud * * * misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged * * * or (5) any other reason justifying relief from the judgment."  To prevail on such a motion, the movant must demonstrate that the party (1) possesses a meritorious defense or claim if the court grants relief; (2) is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) made the motion within a reasonable time, and not more than one year after the judgment if based on the grounds in Civ.R. 60(B)(1), (2), or (3).  *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 150-151, 351 N.E.2d 113 (1976).

## A.

{¶10} Turning to the first prong, the trial court did not abuse its discretion in finding that Ms. Mazii possesses a meritorious claim, in that she may seek a divorce or an

annulment based on Mr. Schaefer's bigamy. We confronted this very issue in *Carnes*. In *Carnes*, the wife initially sought a divorce on grounds of incompatibility, to which her husband consented. Two months after the court granted the divorce, the wife discovered her husband's marriage to another living spouse during their marriage, rendering the second marriage between the wife and husband void. Consequently, the wife sought to set aside the divorce decree pursuant to Civ.R. 60(B).

{¶11} After reciting the effects of a bigamous marriage under Ohio law, we determined that a bigamous marriage provides two alternatives for the party seeking the termination of the marriage: (1) divorce on grounds that the spouse had a husband or wife at the time of the marriage pursuant to R.C. 3105.01(A), or (2) an annulment on the same grounds pursuant to R.C. 3105.31(B). *Carnes* at ¶ 16, citing *Eggleston v. Eggleston*, 156 Ohio St. 422, 427-428, 103 N.E.2d 395 (1952). Because the wife established that her husband had a living spouse at the time of the marriage, we held that she had a meritorious claim to present if relief was granted—to seek a divorce or an annulment—even though she had already obtained a divorce. *Id.* at ¶ 17.

{¶12} Applying *Carnes*, Ms. Mazii certainly has a meritorious claim as well, since Mr. Schaefer himself concedes he had not one, but two, living spouses during his marriage to Ms. Mazii. Without any pathway around *Carnes*, Mr. Schaefer instead highlights Ms. Mazii's failure to declare that she will seek an annulment if relief is granted, positing that she lacks a meritorious claim since the trial court already granted the only other alternative, divorce. But this strikes us as an attempt to impose a rigidity on *Carnes* that we never intended or suggested.

{¶13} Recall that Mr. Schaefer obtained a default judgment here—meaning that he secured the judgment he sought since Ms. Mazii was not before the court. Suffice it to say,

the court probably would not have granted everything that Mr. Schaefer sought had the adversary system worked and the court been apprised of his bigamy. This court in *Carnes* did not require that the wife assert which option of relief, divorce or annulment, she desired, but only that she demonstrate entitlement to either. Similarly, Ms. Mazii need not specify the exact contours of the relief she desires given that she has established a meritorious claim—that she is entitled to a divorce or an annulment on the grounds of bigamy. Therefore, the trial court did not abuse its discretion in finding that Ms. Mazii possessed a meritorious claim.

### B.

{¶14} As to the second prong, the trial court granted relief to Ms. Mazii under Civ.R. 60(B)(5), also known as the "catch-all" provision. *See Melton v. Melton*, 1st Dist. Hamilton No. C-130123, 2013-Ohio-4790, ¶ 12, citing *W2 Properties, L.L.C. v. Haboush*, 196 Ohio App.3d 194, 2011-Ohio-4231, 962 N.E.2d 858, ¶ 26 (1st Dist.). Notably, the purpose of Civ.R. 60(B)(5) is to "relieve a person from the unjust operation of a judgment * * * [and] is available only in 'extraordinary circumstances.' " *Melton* at ¶ 12, quoting *Hatfield v. Goebel*, 1st Dist. Hamilton Nos. C-970819 and C-970940, 1998 WL 597647, *2 (Sept. 11, 1998). While "extraordinary circumstances" may elude a precise definition, we have little hesitation in finding that the trial court acted within its discretion in labeling this just such a case.

{¶15} Turning a blind eye to the realities of the matter at hand, Mr. Schaefer maintains that no extraordinary facts exist here warranting relief under Civ.R. 60(B)(5). But we beg to differ. As a starting point, we have serious questions regarding the efficacy of service of process by publication in this case. Because Ms. Mazii returned to the same residence in Sakhalin where she and Mr. Schaefer previously lived back in 2005, it appears

that he opted to serve her by publication as a means of avoiding actual service of process. Civ.R. 4.4 carefully circumscribes the times when service by publication is appropriate, and it requires an affidavit detailing "all of the efforts made on behalf of the party to ascertain the residence of the party to be served[.]" Civ.R. 4.4(A)(1). The affidavit submitted here only indicated that "reasonable diligence" uncovered no address for Ms. Mazii, but it is devoid of any specifics as to what that diligence entailed, raising more questions than it answers.

{¶16} As we delve into the merits of Ms. Mazii's request, we agree that Mr. Schaefer's "[t]hree concurrent marriages entered across three jurisdictions suggest * * * a pattern of deceit or, at least, * * * material omissions * * * cast[ing] doubt on whether assets, liabilities, and property were properly divided when the Court granted his divorce from [Ms. Mazii]." While it is unclear whether the trial court believed Mr. Schaefer deceived the court itself or Ms. Mazii regarding the bigamous marriage, Ohio courts do recognize fraud against the court as grounds for relief under Civ.R. 60(B)(5). *See Coulson v. Coulson,* 5 Ohio St.3d 12, 448 N.E.2d 809 (1983), paragraph one of the syllabus ("Pursuant to Civ.R. 60(B)(5), a court in appropriate circumstances may vacate a judgment vitiated by a fraud upon the court."); *Roubanes Luke v. Roubanes,* 2018-Ohio-1065, 109 N.E.3d 671, ¶ 23 (10th Dist.) ("Courts carefully distinguish between fraud upon the court, which is a basis for relief from judgment under Civ.R. 60(B)(5), and fraud upon a party, which is a basis for relief from judgment under Civ.R. 60(B)(3)."). While not wholly similar, in *In re Marriage of Watson,* 13 Ohio App.3d 344, 345-347, 469 N.E.2d 876 (9th Dist.1983), the Ninth District held that the wife's concealment of pregnancy during dissolution proceedings constituted a substantial ground to justify relief from the judgment under Civ.R. 60(B)(5).

{¶17} Although courts should "narrowly construe fraud upon the court in order to prevent it from overwhelming Civ.R. 60(B)(3) and rendering Civ.R. 60(B)(3)'s one-year time limitation meaningless," *Roubanes* at ¶ 23, the court here acted within the bounds of its discretion in granting relief given Mr. Schaefer's conduct and the totality of the record before it.

{¶18} Moreover, at the time of the motion for relief hearing, the issue of child custody remained an unresolved and complicated problem. A trio of courts from three different countries had all chimed in on who should have custody: the Bahrain court awarding custody to Mr. Schaefer, the Hamilton County court registering the Bahrain custody decree, and the Russian court granting custody to Ms. Mazii with visitation to Mr. Schaefer. Even presently, we understand Mr. Schaefer's appeal as to the Russian custody order remains pending before that court. (To that point, the parties debated the effect of any ruling that we might issue on those foreign proceedings—but that is beyond our control and something that has no bearing on the procedural question before us.). Given the significance of this issue, we believe the trial court should have an opportunity to decide this question on the merits, with the benefit of a complete record.

{¶19} Further, extraordinary or unusual circumstances creating a pattern of inequities may, taken together, justify relief under Civ.R. 60(B)(5). For instance, in *Sell v. Brockway*, 7th Dist. Columbiana No. 11 CO 30, 2012-Ohio-4552, after settlement, the defendant-appellant paid the agreed-upon damages and believed the clean-up of the job site occurred, as required by the terms of the settlement. However, the plaintiffs moved to enforce the settlement, claiming the clean-up never occurred, and thus seeking additional damages. After a parade of continuances, the court held a hearing without the defendant, requiring him to pay $13,000 in damages. Six months later, defendant learned of the

judgment entered against him, and he sought relief from the judgment under Civ.R. 60(B) because the defendant's attorney never received notice of the hearing and the attorney, at the time of the hearing, had a suspended license. The Seventh District found that, while defendant's attorney's suspended law license was not enough for excusable negligent under Civ.R. 60(B)(1), the "failure of counsel to receive notice of the hearing taken in conjunction with his suspension creates a somewhat extraordinary or unusual situation," justifying relief under Civ.R. 60(B)(5). *Id.* at ¶ 27. So too here we have a lack of actual notice and a record chalked full of deception. For these reasons, we cannot say the trial court abused its discretion in granting Ms. Mazii's motion for relief from judgment under Civ.R. 60(B)(5).

### C.

{¶20} Concerning the timeliness of Ms. Mazii's motion for relief, Civ.R. 60(B) does not specify what a "reasonable time" is for seeking relief under Civ.R. 60(B)(5). *Zwahlen v. Brown*, 1st Dist. Hamilton No. C-070263, 2008-Ohio-151, ¶ 12 ("A 'reasonable time' for mistake, newly discovered evidence, and fraud is not more than one year, but the rule does not specify what constitutes a 'reasonable time' for seeking relief under Civ.R. 60(B)(5)."). Here, Ms. Mazii filed her motion for relief from the judgment on December 4, 2017, a little less than a year after the court entered the default judgment for divorce on December 30, 2016. Considering that Ms. Mazii first learned of the divorce proceeding in July 2017, we agree with the trial court that she filed her motion within a reasonable time, and Mr. Schaefer does not seriously contend otherwise.

### III.

{¶21} While Civ.R. 60(B)(5) calls for relief only under extraordinary circumstances, we find this particular state of affairs satisfies that threshold. Accordingly, we overrule Mr. Schaefer's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P. J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion