[Cite as *Urdiales v. Latin Am. Club of Defiance Ohio*, 2026-Ohio-1239.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

MARGARET URDIALES, ET AL.,

    PLAINTIFFS-APPELLEES,

  v.

LATIN AMERICAN CLUB OF
DEFIANCE OHIO,

    DEFENDANT-APPELLANT,

  -And-

DEFIANCE COUNTY TREASURER,

    DEFENDANT-APPELLEE.

CASE NO. 4-25-10

OPINION AND
JUDGMENT ENTRY

---

**Appeal from Defiance County Common Pleas Court**
**Trial Court No. 22-CV-45695**

**Judgment Affirmed**

**Date of Decision:  April 6, 2026**

---

**APPEARANCES:**

    *Lauren S. Purdy* **for Appellant**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Latin American Club of Defiance, Ohio ("LAC") appeals the judgment of the Defiance County Court of Common Pleas, arguing that the trial court erred in denying its Civ.R. 60(B) motion. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} Miguel Urdiales ("Miguel") was the president and statutory agent for the LAC for a number of years while his wife, Margaret H. Urdiales ("Margaret"), served as the treasurer. In 2017, Miguel was imprisoned for crimes unrelated to the operation of the LAC. Around one year later, the LAC "ceased to function" and went "dormant." (Doc. 10). In 2020, Margaret, as her husband's attorney-in-fact, effectuated Miguel's resignation as the LAC's statutory agent.

{¶3} In response, the Ohio Secretary of State's Office ("SSO") sent the LAC a notice that its corporate charter would be cancelled if a new statutory agent was not appointed. In February of 2021, the SSO issued a notice to the LAC that its corporate charter had been cancelled over its failure to appoint a new statutory agent. The SSO sent these notices to Margaret's address as this was "the only address available to its office." (Doc. 19).

{¶4} On March 23, 2022, Margaret filed a complaint against the LAC and any unknown officers, directors, trustees, or members of the LAC. In her complaint, she alleged that she and her husband had used personal funds in the amount of

$211,106.20 to cover the LAC's operating shortfalls between 2005 and 2021. She further alleged that the LAC no longer had any dues paying members, voting members, officers, or trustees and that its real property was in danger of foreclosure for nonpayment of taxes in 2019, 2020, and 2021.

{¶5} At this time, Margaret's attorney submitted an affidavit that indicated service of process had been performed on the LAC as a defunct entity pursuant to the process outlined in R.C. 1702.06(H). Her attorney averred that the LAC did not have a statutory agent; that Miguel had been the statutory agent; and that service of process through this method went her address. This affidavit was accompanied by the paperwork that showed Margaret had, as Miguel's attorney-in-fact, effectuated his resignation as the LAC's statutory agent.

{¶6} Margaret's attorney also filed an affidavit with a motion that requested service by publication pursuant to R.C. 2703.14(H) and Civ.R. 4.4. In the affidavit, Margaret's attorney averred that the charter of the LAC had been cancelled over its failure to maintain a statutory agent; that the LAC had ceased all operations and was defunct; and that the LAC had no known officers or statutory agents to serve with notice. In response, the trial court issued a judgment entry that ordered service by publication.

{¶7} After filing proof of service by publication, Margaret filed a motion for a default judgment on August 16, 2022. The trial court then issued a default judgment in favor of Margaret. In September of 2022, Paschall and Dynasty

Holdings, LLC ("PDH") purchased the rights under this judgment from Margaret. In 2023, both Miguel and Margaret passed away. At the time of her death, Margaret was the only "remaining member of the [LAC's] board of trustees. . . ." (Doc. 10).

{¶8} In March of 2023, the "LAC became reenergized as an organization"; was recertified with the OSS; and subsequently appointed Isaac Flores ("Flores") as its statutory agent. (Doc. 10). After PDH commenced foreclosure proceedings on the LAC's real property, the revived LAC filed a Civ.R. 60(B) motion that requested relief from the August 16, 2022 judgment in favor of Margaret. The LAC asserted that "[t]he nature of . . . [Margaret's] efforts to serve the LAC with the Complaint were insufficient and in bad faith." (Doc. 10).

{¶9} Included with this motion was an affidavit from Flores. He indicated that the LAC "went dormant" and "ceased to function in 2018." (Doc. 10). He averred that Margaret "never made anyone connected to LAC aware that the organization had been decertified by the . . . [SSO]." (Doc. 10). He also stated that those involved with the revived LAC were not aware of the prior action instituted by Margaret until PDH began foreclosure proceedings.

{¶10} On June 24, 2025, the trial court issued a judgment entry in which it determined that the central assertion of the LAC's Civ.R. 60(B) motion—that Margaret's efforts at serving the LAC were insufficient and in bad faith—was without merit. The trial court found that,

[i]n the underlying claim made by Margaret Urdiales against the defunct Latin American Club, every appropriate and reasonable effort was made to notify any person claiming to be a part of or represent the interests of the defunct organization, as set forth in the affidavit for service by publication, it is apparent that there was simply no one available involved with the entity to personally serve.

(Doc. 19). The trial court then denied the LAC's Civ.R. 60(B) motion without having held a hearing on this matter.

{¶11} The LAC filed its notice of appeal on June 30, 2025. On appeal, the LAC raises the following four assignments of error:

### First Assignment of Error

**The trial court erred in denying Appellants' Motion to Vacate Judgment by failing to consider whether the case was unusual or extraordinary pursuant to Civ.R. 60(B)(5).**

### Second Assignment of Error

**The Trial Court erred in denying Appellants' Motion to Vacate Judgment pursuant to Rule 60(B)(5) by finding that the Motion was not brought within a reasonable time.**

### Third Assignment of Error[1]

**Appellant presented sufficient evidence to support a meritorious defense even though the trial court declined to address the issue.**

### Fourth Assignment of Error

**The Trial Court erred in failing to grant a hearing on the 60(B)(5) Motion even though operative facts in support of the Motion were presented.**

---

[1] This assignment of error was not listed in the table of contents of the appellant's brief but was set forth as a separate assignment of error in the body of the document. For this reason, we set forth this assignment of error separately and alongside the others that were listed in the table of contents.

We will consider the first and second assignments of error together in one analysis.

*First and Second Assignments of Error*

**{¶12}** The LAC argues that the trial court erred in concluding that the grounds for relief set forth in Civ.R. 60(B)(5) were not applicable in this case.

Legal Standard

**{¶13}** Civ.R. 60(B) provides litigants with a vehicle to seek relief from a final judgment. *Wank v. Wank*, 2015-Ohio-3094, ¶ 19 (3d Dist.). To prevail on a Civ.R. 60(B) motion, the movant must establish that (1) a meritorious claim or defense exists to be presented if relief from judgment is granted; (2) one of the grounds listed in Civ.R. 60(B)(1)-(5) entitles the movant to relief; and (3) the timeliness requirements set forth in Civ.R. 60(B) have been satisfied. *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 150-151 (1976). If the movant fails to establish any of the three prongs of this *GTE* test, the trial court should deny the Civ.R. 60(B) motion. *United Bank v. Lemon*, 2018-Ohio-634, ¶ 6 (3d Dist.); *Pickett v. Cath. Health Initiatives*, 2025-Ohio-575, ¶ 34 (6th Dist.).

**{¶14}** Regarding the first prong of the *GTE* test, the movant must establish a meritorious claim or defense exists by "alleg[ing] supporting operative facts with enough specificity to allow the trial court to decide that the movant has a defense he could have successfully argued at trial." *Kerr Bldgs., Inc. v. Bishop*, 2014-Ohio-5391, ¶ 29 (3d Dist.), quoting *Wells Fargo Bank, N.A. v. Dombroski*, 2012-Ohio-5858, ¶ 7 (10th Dist.). The movant does "not [need] to prove that he [or she] will

-6-

prevail on that defense." *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20 (1988). However, "[t]he movant has the burden of demonstrating that 'the interests of justice demand the setting aside of a judgment normally accorded finality." *Lu v. Univ. of Dayton*, 2025-Ohio-1948, ¶ 56 (2d Dist.), quoting *Rose* at 21. *See also Whited v. Whited*, 2020-Ohio-5067, ¶ 10 (4th Dist.).

{¶15} Regarding the second prong of the *GTE* test, Civ.R. 60(B)(1)-(5) sets forth the following grounds for relief:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;

(4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(5) any other reason justifying relief from the judgment.

Civ.R. 60(B)(1)-(5). Importantly, a movant cannot rely upon the "catchall provision" in Civ.R. 60(B)(5) if a more specific ground for relief set forth in Civ.R. 60(B) is applicable. *Souders v. U.S. Bank National Association*, 2023-Ohio-4709, ¶ 18 (3d Dist.); *Harrison v. Doerner*, 2010-Ohio-4682, ¶ 26 (8th Dist.).

{¶16} "Civ.R. 60(B)(3) applies when an adverse party's fraud, misrepresentation, or misconduct in obtaining a judgment has prevented the other

party from fully and fairly presenting its case." *Luke v. Roubanes*, 2018-Ohio-1065, ¶ 23 (10th Dist.). This provision "does not refer to conduct that would have been a defense to or claim in the case itself." *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 13. The text of this rule encompasses "intrinsic fraud, such as attaching a materially false affidavit to [a] . . . motion for summary judgment," and "extrinsic fraud, such as persuading the [opposing party] . . . not to defend their case by falsely promising to voluntarily dismiss the action." *Id*. at ¶ 14.

{¶17} In turn, the "catchall provision" in Civ.R. 60(B)(5) "reflect[s] the inherent power of a court to relieve a person from the unjust operation of a judgment." *Schmidt v. Patriot Concrete, LLC*, 2025-Ohio-428, ¶ 27 (3d Dist.), quoting *Caruso-Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64, 66 (1983). Civ.R. 60(B)(5) is available "only in those extraordinary and unusual cases where the moving party demonstrates substantial grounds warranting relief from judgment." *Souders* at ¶ 18 (3d Dist.), quoting *Luke* at ¶ 22. "The grounds for invoking Civ.R. 60(B)(5) should be substantial." *Caruso-Ciresi* at paragraph two of the syllabus.

{¶18} Regarding the third prong of the *GTE* test, a motion made pursuant Civ.R. 60(B)(1)-(3) must be filed within a reasonable time that is "not more than one year after the judgment . . . ." Civ.R. 60(B). A motion made pursuant to Civ.R. 60(B)(4)-(5) need only be made within a "reasonable time. . . ." Civ.R. 60(B).

> What constitutes a reasonable time is dependent upon the facts and circumstances of the case. [*Simmons v.*] *Simmons*[, 2012-Ohio-4164,

¶ 8 (8th Dist.).] . . . 'Timeliness is an issue that is left to the discretion of the trial court, and each case must be decided on its own merits.'

*Wagenheim v. Wagenheim*, 2023-Ohio-4219, ¶ 12 (8th Dist.), quoting *Simmons* at ¶ 8. As noted previously, Civ.R. 60(B)(5) is not to "be used as a substitute for any of the other more specific provisions of Civ.R. 60(B)." *Caruso-Ciresi* at 66.

> The reason for this rule is self-evident: if a party could recast a claim under Civ.R. 60(B)(1), (2), or (3) into a Civ.R. 60(B)(5) claim, it would render the time limitations under the former meaningless. Judgments would be open to attack in perpetuity . . . .

*Wottreng v. CBTM Elberon, LLC*, 2023-Ohio-2207, ¶ 10 (1st Dist.).

{¶19} The terms of Civ.R. 60(B) are to be construed liberally as this provision is a remedial rule. *Ithaca Distrib. v. High Std. Mfg. Co.*, 2015-Ohio-223, ¶ 4 (3d Dist.).

> However, the competing principle that litigation must be brought to an end is also pertinent here. . . . Relief from a final judgment should not be granted unless the party seeking such relief makes at least a prima facie showing that the ends of justice will be better served by setting the judgment aside.

(Citation omitted.) *Rose*, 36 Ohio St.3d 17, at 21. *See also GMAC Mortg., LLC v. Herring*, 2010-Ohio-3650, ¶ 31-32 (2d Dist.).

Standard of Review

{¶20} A trial court's decision to grant or deny a Civ.R. 60(B) motion is reviewed on appeal under an abuse of discretion standard. *Henry County Bank v. Toledo Radio, LLC*, 2022-Ohio-1360, ¶ 9 (3d Dist.). An abuse of discretion is more than a mere error in judgment. *New Technology Products Pty Ltd. v. Scotts Miracle-*

-9-

*Gro Co.*, 2022-Ohio-3780, ¶ 14 (3d Dist.). Rather, an abuse of discretion is present where a decision is arbitrary, unconscionable, or unreasonable. *Davidson v. Hatcher*, 2022-Ohio-4452, ¶ 22 (3d Dist.).

## Legal Analysis

**{¶21}** Importantly, the LAC expressly states in its brief that it is *not* asserting "that the judgment was void for lack of constitutionally adequate notice." (Appellant's Brief, 7). As a general matter,

> 'for a court to acquire jurisdiction[,] there must be a proper service of summons or an entry of appearance, and a judgment rendered without proper service or entry of appearance is a nullity and void.' *Lincoln Tavern, Inc. v. Snader*, 165 Ohio St. 61, 64, 133 N.E.2d 606 (1956). 'A party who can show a judgment is void need not meet the requirements for vacating a voidable judgment in Civ.R. 60(B) and can rely on the trial court's inherent authority to vacate a void judgment.' *Blon v. Royal Flush, Inc.*, 2022-Ohio-1958, 191 N.E.3d 505, ¶ 15 (7th Dist.).

(Citations omitted). *Monogram Credit Card Bank of Ga. v. Yoakum*, 2023-Ohio-546, ¶ 7 (2d Dist.). *See also 4 Quarters, LLC v. Hunter*, 2021-Ohio-3586, ¶ 10 (7th Dist.). On appeal, the LAC indicates that it forwent an argument based on these legal concepts because Margaret had the LAC served through publication and through the procedures outlined in 1701.07(H).

**{¶22}** Instead of arguing that the judgment was void for a lack of service or a lack of personal jurisdiction, the LAC expressly limits its arguments to those that seek to establish that its Civ.R. 60(B) motion satisfies the three prongs of the *GTE* test. In fact, the LAC indicates that the trial court erred by focusing on "a binary

-10-

review of service by publication" when it should have conducted a "broader equitable inquiry" into the surrounding circumstances of this case under Civ.R. 60(B)(5). (Appellant's Brief, 5). In other words, the LAC is essentially asserting that the trial court erred by narrowly focusing on the issue of service under "common-law principles" when it should have been focusing on the equities of the larger situation under Civ.R. 60(B). (*Id.*).

{¶23} Because the LAC has expressly limited its argument to whether its Civ.R. 60(B) motion meets the requirements of the *GTE* test, we will limit our analysis accordingly. The core of the LAC's argument is that Margaret essentially used fraud, misrepresentations, or other misconduct to avoid making "affected individuals" aware of this action and to secure a judgment without opposition. (Appellant's Brief, 6). While allegations of fraud upon a party generally fall within the scope of Civ.R. 60(B)(3), allegations of fraud upon the court fall within the scope of Civ.R. 60(B)(5). *Knox v. Dorsey*, 2023-Ohio-2151, ¶ 10 (9th Dist.); *Luke*, 2018-Ohio-1065, at ¶ 22-23 (10th Dist.).

{¶24} "Fraud of an adverse party may exist when, for example, a party presents material false testimony at trial, and the falsity is not discovered until after the trial." *In re Dankworth Trust*, 2014-Ohio-5825, ¶ 38 (7th Dist.). The reason such conduct falls under Civ.R. 60(B)(3) is because "[t]he possibility of perjury, even concerted, is a common hazard of the adversary process," and "litigants are

equipped to deal [with the potential for perjury] through discovery and cross-examination. . . ." *Luke*, 2018-Ohio-1065, at ¶ 24 (10th Dist.).

**{¶25}** In contrast, fraud upon the court "defile[s] the court itself, or is a fraud perpetrated by the officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudicating cases that are presented for adjudication." *Coulson v. Coulson*, 5 Ohio St.3d 12, 15 (1983). "Examples of fraud upon the court justifying Civ.R. 60(B)(5) relief include egregious misconduct such as bribery of a judge or jury member by a third party or fabrication of evidence by counsel." *Luke*, 2018-Ohio-1065, at ¶ 22 (10th Dist.). These fraudulent acts are forms of misconduct that "a court cannot necessarily expect to be exposed by the normal adversary process." *Id.* at ¶ 24.

**{¶26}** "Courts narrowly construe fraud upon the court as contemplated in Civ.R. 60(B)(5) to prevent it from subsuming fraud upon a party as contemplated in Civ.R. 60(B)(3)." *Elevation Enters. v. Anchor Capitol L.L.C.*, 2023-Ohio-1646, ¶ 19 (10th Dist.). For this reason, fraud "between the parties" falls under Civ.R. 60(B)(3) while fraud perpetrated by "an attorney or other officer of the court" falls under Civ.R. 60(B)(5). *Planchak v. Ladd*, 2023-Ohio-1836, ¶ 16-17 (2d Dist.), quoting *Luke*, 2018-Ohio-1065, at ¶ 22, 26 (10th Dist.).

**{¶27}** "Fraud on the court granting the default judgment must be proved by clear and convincing evidence. . . ." *Armstrong v. U.S. Bank Nat'l Ass'n*, 2023-Ohio-1203, ¶ 26 (1st Dist.), quoting *First Nat'l. Bank of Clermont Cty. v. Blanchard*,

1977 Ohio App. Lexis 8482, 4 (1st Dist. June 8, 1977). A "trial court is best able to determine whether a fraud has been perpetrated upon it. Consequently, the trial court's determination of the issue is entitled to great weight[.]" *Barton v. Barton*, 2016-Ohio-5264, ¶ 19 (2d Dist.), quoting *Hartford v. Hartford*, 53 Ohio App.2d 79, 83-84 (8th Dist. 1977).

{¶28} Turning to the facts of this case, the LAC argues that larger context surrounding the alleged fraud, misrepresentations, or misconduct in this case constitute extraordinary or unusual circumstances that fall within Civ.R. 60(B)(5). *Schaefer v. Mazii*, 2019-Ohio-3808, ¶ 16-19 (1st Dist.). *See also State Alarm, Inc. v. Riley Indus. Servs.*, 2010-Ohio-900, ¶ 20 (8th Dist.); *Aurora Bank, F.S.B. v. Gordon*, 2016-Ohio-935, ¶ 12-13 (8th Dist.).

{¶29} To support this assertion, the LAC makes two main allegations that are related to the affidavits Margaret's attorney signed as affiant and filed with the trial court. First, the LAC alleges that Margaret "claimed ignorance" of the "addresses of individuals historically affiliated with LAC" and secured notice by publication based upon this misrepresentation. (Appellant's Brief, 7). Second, the LAC points out that Margaret cancelled its statutory agent; did not appoint a successor; and informed the trial court that she used the process set forth in R.C. 1702.06(H).

{¶30} Regarding the first allegation, Margaret's complaint alleged that the LAC had been "abandoned by its members"; had no "dues-paying members"; had

-13-

no members with voting rights; and had no elected officers or trustees at that time. (Doc. 1). Margaret's attorney then filed an affidavit in which he averred that LAC was "defunct" and had "ceased operations." (Doc. 2). His affidavit also indicated that he was not aware of an individual who could be personally served on behalf of the LAC.

**{¶31}** In this case, the Civ.R. 60(B) motion included an affidavit from the president of the revived LAC. In this affidavit, Flores admitted that the organization had "ceased to function in 2018" and indicated that the LAC was not "certified again with the Ohio Secretary of State" until the year after the default judgment had been issued. (Doc. 10). Flores also stated that he believed that Margaret did not attempt to serve "members" of the LAC and that he believed she was aware of the addresses of these unnamed individuals. (Doc. 10).

**{¶32}** However, Flores did not name any individuals who should have purportedly been served on behalf of the LAC; indicate that the LAC had dues-paying members, voting members, officers, or trustees in 2022; or provide any addresses where service should have been effectuated. It is not clear whether these unnamed individuals were actual "members" of the LAC in 2022, were former "members" of the LAC in 2022, or were current "members" of the revived organization after its reinvigoration in 2023. (Doc. 10).

**{¶33}** We note that the text of the LAC's Civ.R. 60(B) motion alleges that Margaret knew the addresses of "*former* Board members and officers" and that she

-14-

did not notify these individuals of the pending action.  (Emphasis added.)  (Doc. 10).  The motion also states that Margaret was the LAC's only trustee at the time of her death in 2023.  However, the affidavit did not identify the names of any people who were then current members, officers, or trustees of the organization in 2022.

{¶34} In its judgment entry, the trial court found that the LAC's assertion that Margaret's efforts at service "were insufficient and in bad faith" to be "without merit."  (Doc. 19, quoting Doc. 10).  The trial court further found that the LAC was "defunct" at the time of the complaint and that "there was simply no one available involved with the entity to personally service."  (Doc. 19).

{¶35} Regarding the second allegation, Margaret's attorney filed the documents that showed Margaret had cancelled the LAC's statutory agent on behalf of her husband and that this action led to the cancellation of the LAC's articles of incorporation.  Margaret's attorney also filed an affidavit that informed the trial court that completion of the process outlined in R.C. 1702.06(H) would ultimately lead to service on Margaret's residence.

{¶36} In its judgment entry, the trial court indicated that it was aware of the situation surrounding the cancellation of the statutory agent.  Taking this situation into account, the trial court found that "service by publication was appropriate under the circumstances then existing . . . ."  (Doc. 19).  After making these findings, the trial court denied LAC's motion for relief from judgment.

-15-

**{¶37}** Importantly, we are to give great weight to the trial court's determination in situations of alleged fraud, misrepresentations, or other misconduct upon the court because the trial court is best able to determine whether actions of such a nature were in fact perpetrated. *Coulson*, 5 Ohio St.3d 12, at 16. In this case, trial court indicated an awareness of the key conditions that the LAC suggests are indications of fraud, misrepresentations, or other misconduct. Having examined the record, we defer to the trial court's decision and conclude that the LAC has failed to demonstrate that Civ.R. 60(B)(5) provides grounds for relief in this case.

**{¶38}** Finally, to the extent that the arguments in LAC's motion for relief from judgment could be construed as alleging that Margaret committed fraud against a party, they would fall within the ambit of Civ.R. 60(B)(3). *See In re Estate of Karder*, 2011-Ohio-3229, ¶ 28 (5th Dist.) (finding that allegations of self-dealing, a "sham sale," and fraud were properly considered under Civ.R. 60(B)(3)).

**{¶39}** A motion for relief from judgment that falls within Civ.R. 60(B)(3) must be filed "not more than one year after the judgment . . . ." Civ.R. 60(B). In this case, the LAC filed a Civ.R. 60(B) motion on September 24, 2024 that sought relief from a judgment that was issued on August 16, 2022. For this reason, the trial court did not err in concluding that the LAC's motion for relief from judgment was not filed within a reasonable time to the extent that the arguments contained therein fall within the ambit of Civ.R. 60(B)(3). *See Schindler v. Cornett*, 2014-Ohio-3352, ¶ 24 (2d Dist.).

{¶40} In summary, the LAC's Civ.R. 60(B) motion essentially asserts that the judgment in this case was secured without opposition through fraud, misrepresentations, or other misconduct. However, the trial court indicated that it was aware of the key conditions that the LAC identified as the basis of its central arguments. Thus, we conclude the LAC failed to establish that this case presents the extraordinary or unusual situation that warrants relief under Civ.R. 60(B)(5).

{¶41} Further, we conclude that LAC's motion for relief from judgment was not timely filed to the extent that the arguments contained therein could be construed as falling within the ambit of Civ.R. 60(B)(3). As the result of these conclusions, none of the LAC's arguments can satisfy all three of the prongs in the *GTE* test. Since the arguments raised herein do not establish that the trial court abused its discretion in denying the LAC's Civ.R. 60(B) motion for relief from judgment, the first and second assignments of error are overruled.

### Third Assignment of Error

{¶42} The LAC argues that its 60(B) motion for relief from judgment presented several meritorious defenses.

### Legal Standard

{¶43} Under App.R. 12(A)(1)(c), "[a]ppellate courts are to 'decide each assignment of error' raised on appeal 'unless an assignment of error is made moot by a ruling on another assignment of error . . . .'" *Durfor v. West Mansfield Conservation Club*, 2022-Ohio-416, ¶ 39 (3d Dist.), quoting App.R. 12(A)(1)(c).

An issue is moot where it presents "no actual genuine, live controversy, the decision of which can definitely affect existing legal relations." *Sullinger v. Reed*, 2021-Ohio-2872, ¶ 52 (3d Dist.), quoting Borchard, Declaratory Judgments, at 35 (2d Ed. 1941). "Put differently, an assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court." *Sullinger* at ¶ 52, quoting *State v. Gideon*, 2020-Ohio-6961, ¶ 26.

Legal Analysis

**{¶44}** To prevail on a Civ.R. 60(B) motion, a party must establish all three prongs of the test set forth in *GTE Automatic Electric, Inc.*, 47 Ohio St.2d 146 at 151 (1976). Our analyses of the first and second assignments of error establish that none of the LAC's arguments can satisfy all three prongs of this test. Thus, even if the LAC's Civ.R. 60(B) motion set forth a meritorious claim or defense, the LAC still could not prevail in this appeal. *See Nohle v. Gwiner*, 2013-Ohio-3075, ¶ 18, 22 (3d Dist.); *Tejeda v. Toledo Heart Surgs., Inc.*, 2009-Ohio-3494, ¶ 26 (6th Dist.). For this reason, pursuant to App.R. 12(A)(1)(c), we decline to address the arguments raised in the third assignment of error.

*Fourth Assignment of Error*

**{¶45}** The LAC argues that the trial court erred by denying its Civ.R. 60(B) motion for relief from judgment without holding a hearing.

Case No. 4-25-10

Legal Standard

**{¶46}** "[A] party moving for relief from judgment under Civ.R. 60(B) is not automatically entitled to an evidentiary hearing." *KeyBank National Association v. Midtown Inspiration, LLC*, 2025-Ohio-1737, ¶ 40 (8th Dist.), quoting *PNC Bank, N.A. v. DePalma*, 2012-Ohio-2774, ¶ 12 (8th Dist.). Rather,

> [i]f the movant files a motion for relief from judgment and it contains allegations of operative facts which would warrant relief under Civil Rule 60(B), the trial court should grant a hearing to take evidence and verify these facts before it rules on the motion.

*Coulson*, 5 Ohio St.3d 12, at 16 (1983), quoting *Adomeit v. Baltimore*, 39 Ohio App.2d 97, 105 (8th Dist. 1974).

> To warrant a hearing, the movant must allege operative facts that, if true, would be sufficient to establish each of the elements of the GTE test, and if the movant fails to allege operative facts with respect to each of these elements, the court is not required to hold an evidentiary hearing.

*Gibbs v. Burley Trucking, L.L.C.*, 2021-Ohio-1595, ¶6 (10th Dist.). A trial court's decision to deny a Civ.R. 60(B) motion without a hearing will not be reversed on appeal in the absence of an abuse of discretion. *Custom Pro Logistics, LLC v. Penn Logistics LLC*, 2022-Ohio-1774, ¶ 23 (1st Dist.); *Schmidt*, 2025-Ohio-428, at ¶ 23 (3d Dist.).

Legal Analysis

**{¶47}** On appeal, the LAC asserts that the trial court should have held a hearing because the Civ.R. 60(B) motion alleged operative facts in support of the

-19-

three prongs of the test set forth in *GTE Automatic Electric, Inc*., 47 Ohio St.2d 146 at 151 (1976). However, our resolutions of the first and second assignments of error established that the LAC failed to allege operative facts to substantiate each of the prongs of the *GTE* test. *Treasurer of Lucas Cty. v. Mt. Airy Invs. Ltd.,* 2019-Ohio-3932, ¶ 24 (6th Dist.) ("If the trial court determines that the movant failed to allege operative facts that would warrant relief under Civ.R. 60(B), it may deny the motion without a hearing."). Thus, the LAC's argument fails to establish that the trial court abused its discretion by declining to hold a hearing in this case.

{¶48} Notably, the LAC does not base the arguments in its brief on the more liberal standard for holding hearings that governs situations in which the defendant alleges that no service was received. A brief examination of the facts of this case under this standard explains why. As a general matter,

> '[t]he plaintiff bears the burden of obtaining proper service on a defendant.' *FIA Card Servs. NA v. Adler*, 8th Dist. Cuyahoga No. 111087, 2022-Ohio-4631, ¶ 16. . . . 'Where the plaintiff follows the civil rules governing service of process, courts presume that service is proper unless the defendant rebuts this presumption with sufficient evidence of nonservice.' *Id*. . . .

(Citations omitted.) *Kassouf v. Barylak*, 2023-Ohio-314, ¶ 21 (8th Dist.). "The party seeking to vacate a judgment for lack of service has the burden to rebut the presumption by setting forth evidence that establishes nonservice." *Universal Acceptance Corp. v. Orwig*, 2024-Ohio-1069, ¶ 18 (6th Dist.).

**{¶49}** "[T]he presumption of proper service can be rebutted 'where a defendant presents sufficient evidentiary-quality information demonstrating that service was not accomplished." *Kassouf* at ¶ 21, quoting *Kent State Univ. v. Manley*, 2022-Ohio-4512, ¶ 21 (8th Dist.).

> A trial court may hold a hearing to determine whether credible, competent evidence supports nonservice. . . . However, '[i]t is reversible error for a trial court to disregard unchallenged testimony that a person did not receive service.'

*Universal Acceptance Corp.* at ¶ 19, quoting *Yost v. McNea*, 2021-Ohio-2145, ¶ 25 (6th Dist.), quoting *Rafalski v. Oates*, 17 Ohio App.3d 65, 67 (8th Dist. 1984).

**{¶50}** In this case, the affidavit submitted by the LAC with its Civ.R. 60(B) motion did not assert that *it* was not properly served with notice of this action. Rather, the affidavit vaguely asserted that other individuals who had, on some level, been associated with the LAC at some point in time were not made aware of this action. This affidavit did not provide information that explained the relationship between these unnamed individuals and the LAC at the time the action was instituted.[2]

**{¶51}** Further, the revived LAC did not submit an affidavit from anyone who claimed to be a dues-paying member, a voting member, or an officer of the LAC at the time that this action was instituted. The affidavit also did not provide the trial court with any names or addresses of anyone that should have been served with the

---

[2] The absence of clarity on this matter also raises questions about whether the LAC has standing to make assertions or raise legal claims on behalf of these other unnamed individuals.

complaint. As a result, the affidavit was not sufficient to establish whether these unnamed individuals should have been served with notice of this action.

{¶52} While the affidavit did not identify who was available to be served on behalf of the LAC at the time this action was commenced, it did admit that the LAC had "ceased to function in 2018." (Doc. 10). Thus, the revived LAC did not rebut Margaret's claim that the organization was defunct at the time she filed suit. For these reasons, the statements in the affidavit would have ultimately been insufficient to establish a lack of service in this case. *See Ohio Civil Rights Comm'n v. First Am. Props.*, 113 Ohio App.3d 233, 239 (2d Dist. 1996); *Harvey v. Boak*, 2019-Ohio-1811, ¶ 17 (5th Dist.).

{¶53} As an additional complication, we note that Margerat and her husband are now deceased. For this reason, the original plaintiff is not available to appear at any hearing on this matter and would be unable to address any claims or defenses asserted by the LAC if the Civ.R. 60(B) had been granted. Since the original plaintiff is deceased, the LAC served the third-party purchaser of Margaret's judgment, PDH, with a copy of its Civ.R. 60(B) motion.[3]

{¶54} In summary, the LAC expressly stated in its brief that it is *not* arguing that the judgment was void for lack of service and that the trial court erred by

---

[3] PDH was not a party to this action at the time of the original action or at the time that the LAC filed a Civ.R. 60(B) motion. In fact, PDH seems to have been brought into the orbit of this action when the revived LAC noticed them with a copy of its Civ.R. 60(B) motion. However, at this juncture, we decline to address the circumstances that brought PDH into this action and only note that this appears to be yet another complication in a rather unusual fact pattern.

conducting "a binary review of service by publication." (Appellant's Brief, 5). Since the LAC failed to substantiate all three prongs of the *GTE* test, we conclude that the trial court did not abuse its discretion in deciding not to hold a hearing on the LAC's Civ.R. 60(B) motion. Accordingly, the fourth assignment of error is overruled.

*Conclusion*

{¶55} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Defiance County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and WALDICK, J., concur.**

Case No. 4-25-10

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

_____
John R. Willamowski, Judge


_____
William R. Zimmerman, Judge


_____
Juergen A. Waldick, Judge

DATED:
/hls

-24-